### MILES v. VIVIAN et al.

(Circuit Court of Appeals, Second Circuit. April 8, 1897.)

1. MORTGAGE TRUSTEES—NEGLECT TO RECORD—LIABILITY TO BONDHOLDERS.
　　A railroad-mortgage trustee, who certifies on the bonds that they are secured by a mortgage executed and delivered to him, is liable to a holder of the bonds for loss of value occasioned by his neglect to record the mortgage, whereby a subsequent, duly-recorded mortgage obtains priority.

2. SAME—LIMITATIONS OF ACTIONS—LACHES.
　　The liability in such case arises immediately on the recording of the subsequent mortgage, and a delay by a bondholder of over 20 years thereafter, and until the death of the trustee, in enforcing his claim, precludes him from maintaining a suit, both under the New York statute of limitations, and by the equitable bar of laches.

3. SAME—FEDERAL COURTS.
　　Although the ordinary chancery jurisdiction of the courts of the United States cannot be abridged by state statutes, they recognize the statutes of limitation of the state in which the court is sitting, and adopt them, if they do not act in obedience to them. And accordingly they will adjudge,

in cases over which there is a concurrent jurisdiction by courts of law and equity, that lapse of time to be a bar in equity which would have constituted a bar if the action had been at law.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Vanderpoel, Cuming & Goodwin (Almon Goodwin, of counsel), for appellants.

Evarts, Choate & Bearman (Treadwell Cleveland, of counsel), for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The bill of complaint in this cause was filed against the executors of Marshall O. Roberts, deceased, to recover the value of 10 mortgage bonds, for $1,000 each, made November 10, 1866, by the Florida Railroad Company, and purchased by the complainant in August, 1868. The bill alleges that Roberts was a trustee for the complainant, and did willfully and fraudulently, and with intent to cheat and defraud the complainant, omit and neglect to cause the mortgage securing the bonds to be recorded, and that in consequence thereof the bonds became worthless. The defenses interposed by the defendants are, among others, those of laches, and the statute of limitations. The cause was heard upon an agreed statement of facts, in lieu of the ordinary proofs, and resulted in a decree for the complainant, from which the defendants have appealed.

The facts are meagerly set forth, and are given a color and construction in the prepared statement much more favorable to the complainant than is warranted by the bill of complaint and the written documents, but, read with the bill and documents, are these:

On or about November 10, 1866, the Florida Railroad Company, a corporation of the state of Florida, executed 10 bonds, each for the sum of $1,000, payable March 1, 1887, with interest semiannually on the 1st days of September and March, beginning September 1, 1867, for which coupons were annexed to each bond. The bonds purported to be part of an issue of 1,200 bonds of like tenor and effect, all secured by a mortgage of the railroad and other property of the corporation, made and executed November 10, 1866, to Marshall O. Roberts, as trustee. Each of said bonds bore a certificate subscribed by the said Marshall O. Roberts as trustee, as follows:

"I hereby certify that the within bond is one of a series of first mortgage bonds, amounting to $1,200,000, secured by the deed of trust or mortgage within mentioned, executed and delivered by the Florida Railroad Company to Marshall O. Roberts, Trustee. M. O. Roberts, Trustee."

In August, 1868, the said 10 bonds, with all the coupons annexed, —the bonds having indorsed thereon the certificate aforesaid,— were purchased by the complainant, and delivered to him by the said Florida Railroad Company. At that time Roberts was a director of the company. The mortgage was never recorded. May 26, 1869, the Florida Railroad Company executed a certain other mortgage to John A. Stewart and Frederick A. Conklin, as trustees, covering the same property described in the previous mortgage, as

security for an issue of $2,300,000 of bonds. The bonds were issued and negotiated, and in June, 1869, this mortgage was duly recorded, and became a first lien upon all the property of the corporation. When this mortgage was created, Roberts was the president of the corporation, and as such signed it. He became the owner, personally, of a large amount of the bonds. Subsequently the Florida Railroad Company made default in the payment of the interest upon the bonds secured by the later mortgage, and a suit to foreclose the mortgage was duly instituted. Thereafter a decree of foreclosure was entered, and under the decree all the property of the corporation was sold; the price realized upon said sale not being sufficient to pay the amount of that mortgage. If that mortgage had not been recorded, and the earlier one had been, the bonds of the complainant would have been worth 72 cents on the dollar of their face amount. No interest was ever paid upon complainant's bonds, except the amount of the first coupon. In October, 1872, the complainant commenced an action upon his bonds in one of the courts of the state of New York against Roberts; but he never served any complaint or took any other proceedings therein beyond the service of process, and several years later discontinued the action. Roberts died September 11, 1880, and his will was admitted to probate, and the executors therein named duly qualified as such October 8, 1880. The present suit was commenced July 30, 1890.

In disposing of the case, all the charges of fraud are to be eliminated from consideration. The facts do not disclose the slightest evidence of any dishonest conduct on the part of Roberts. Indeed, no attempt has been made in the agreed statement to substantiate by evidence the averments of the bill in that regard.

So far as appears, none of the bonds bearing his certificate were outstanding when the later mortgage was executed, except those bought by the complainant; nor does it appear that any of them, except these, had ever been negotiated by the Florida Railroad Company. It is incomprehensible why the company should have proposed to create an issue of $2,300,000 bonds, with any expectation of advantage, when those of an issue of $1,200,000 were only worth 72 cents on the dollar, assuming them to be secured by a prior and recorded mortgage. What could the company gain, except an injury to its credit and business management, by issuing first mortgage bonds presumably not salable for more than 35 cents on the dollar? Why were the complainant's bonds worth only 72 cents on the dollar at the very time the company was about creating the new mortgage? The circumstances, in connection with the long inaction of the complainant after the nonpayment of interest upon his bonds, interrupted only by the bringing of the suit which he apparently never intended to prosecute, suggest persuasively that there is some flaw in the merits of the complainant's case, which, if Roberts were alive, could be exposed.

The case rests upon the fact that Roberts signed the certificate, thereby representing himself to be the trustee named in the mortgage, and that the mortgage has been delivered to him. The mort-

gage mentioned in the certificate must be assumed to have been in his possession, but what duties or powers were by its terms devolved upon him are matters of pure conjecture, as no evidence whatever of its contents is found in the record.

Mortgages of railroad companies and other corporations are usually in the form of trust deeds, with a power of sale, in which trustees are named to take and hold the title of the mortgaged property for the benefit of the bondholders. The bonds are made negotiable so that they may be conveniently disposed of in the market, and the mortgage is, in effect, a contract between the corporation making it and the trustee, as representing all persons who may become holders of the bonds secured by it. The nature and character of the trust assumed by the trustee vary in different instruments of that nature, and are determined by the express terms of the trust deed, and by the implied powers and duties which arise from the relations of the parties to the trust fund. It is said in Jones on Corporate Bonds and Mortgages (2d Ed., "Railroad Securities," § 287) that:

"Immediately upon the execution of the deed, and so long as no active duty is demanded of the trustee, the trust is little more than nominal. It is what is termed a 'dry, naked trust.' Generally the trustees have nothing to do with the negotiation of the bonds, and so long as the interest is promptly paid, so that no forfeiture occurs, their office is silent. But when a forfeiture has occurred through the nonpayment of the interest or principal secured, or through the breach of any other condition of the mortgage, new and important duties arise. The mortgage, in terms, generally requires the trustee to take possession of the mortgaged property and sell it for the benefit of the bondholders. The fulfillment of these express trusts in behalf of the bondholders is the primary and most obvious duty of the trustee."

Among the implied duties of a mortgage trustee, one of the most imperative is to use requisite diligence to protect the security he has taken for the bondholders. Being the grantee in the trust deed, this duty of vigilance requires him to exercise the care which a prudent grantee would deem to be necessary for his own protection; and in this behalf we do not doubt that he should see to it that the trust deed is duly recorded, so that no liens of a subsequent date will attach and obtain priority over the mortgage lien. He is chargeable with any loss resulting from his neglect to record the trust deed. Cooper v. Day, 1 Rich. Eq. 26; Cogbill v. Boyd, 77 Va. 450.

Because of Roberts' neglect in this particular, the bonds of the complainant became valueless. Fraud not having been shown, the complainant's cause of action rests wholly upon this default. It is idle to assert that Roberts was guilty of a fraud, or a violation of his duty as trustee, towards the complainant, in authenticating by his signature the execution by the Florida Railroad Company of the later mortgage. That corporation had a right to create the mortgage, and to cause it to be recorded, and it was the duty of its president to execute officially any instrument which the corporation was authorized and saw fit to make. The fact that this was done when the complainant's bonds were outstanding and imperfectly secured is as consistent with the theory of mistake and inadvertence

as with that of fraud. If Roberts had known that there were any outstanding bonds of the earlier issue, it is remarkable that he should have permitted the later mortgage to be recorded before the earlier one, at the risk of personal liability to the extent of their value. Railroad mortgages to secure large issues of bonds which are to be offered to the public are seldom created in the dark. On the contrary, they are usually brought to the early knowledge of investors and financiers, and the public generally. Neither the railroad company nor Roberts could have been so foolish as to suppose that the making and recording of the later mortgage would not be speedily known, and attract the attention of the creditors of the company. The execution and recording of this mortgage doubtless caused the loss which the complainant has sustained, but the breach of duty on the part of Roberts was his neglect to record the earlier mortgage. Upon the recording of the later mortgage the complainant's cause of action became complete, and he could have maintained an action at law against Roberts for any loss accruing from the latter's default, and recovered full compensation therefor. He delayed the enforcement of this claim for a period of over 20 years,—until after the death of Roberts. By reason of this delay, we are of the opinion that he was precluded from maintaining the present action, both by the bar of the statute of limitations and by the equitable bar of laches.

It is a general rule that in the case of an express, continuing trust, not disavowed with the knowledge of the beneficiary, the statute of limitations has no application. The cases coming within this rule are technical and continuing trusts, which are not cognizable at law, but which fall within the proper and exclusive jurisdiction of chancery; and the rule has no application to cases of implied trusts. Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610; Harlow v. Dehon, 111 Mass. 195; Young v. Mackall, 3 Md. Ch. 398; Raymond v. Simonson, 4 Blackf. 97; Parks v. Satterthwaite, 132 Ind. 411, 32 N. E. 82. In Kane v. Bloodgood, 7 Johns. Ch. 90, Chancellor Kent said:

"I cannot assent to the proposition that all cases of direct and express trust, and arising between trustee and cestui que trust, are to be withdrawn from the operation of the statute of limitations, notwithstanding a clear and certain remedy exists at law. * * * A review of the decisions will enable us, as I apprehend, to deduce from them a safer and sounder doctrine, and to establish upon the solid foundations of authority and policy this rule: that the trusts intended by the courts of equity not to be reached or affected by the statute of limitations are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of this court."

Statutes of limitation are equally obligatory upon courts of equity and courts of law, in cases in which the jurisdiction is concurrent. In such cases courts of equity do not act so much in analogy to the statutes as in obedience to them. 2 Story, Eq. Jur. (13th Ed.) 842. Although the ordinary chancery jurisdiction of the courts of the United States cannot be abridged by state statutes, they recognize those of the state in which the court is sitting, limiting the time for bringing suits, and adopt them, if they do not act in obedience to

them.   Coulson v. Walton, 9 Pet. 62;  Harpending v. Dutch Church, 16 Pet. 455;  Badger v. Badger, 2 Wall. 87, 94;  Clarke v. Boorman, 18 Wall. 493;  Carrol v. Green, 92 U. S. 509;  Kirby v. Railroad Co., 120 U. S. 130, 7 Sup. Ct. 430.   Accordingly, they will adjudge, in cases over which there is a concurrent jurisdiction by courts of law and equity, that lapse of time to be a bar in equity which would have constituted a bar if the action had been at law.   Norris v. Haggin, 136 U. S. 391, 10 Sup. Ct. 942;  Alsop v. Riker, 155 U. S. 448, 15 Sup. Ct. 162.   In Boone County v. Burlington & M. R. R. Co., 139 U. S. 684, 11 Sup. Ct. 687, the rule was applied where the state statute barred an action for relief on the ground of fraud unless commenced within four years after the discovery of the fraud.   Applying this rule to the present case, the six-year statute of limitations, which has been pleaded by the defendant, would seem to bar the action.   If it does not, the ten-year statute applies.   Hubbell v. Medbury, 53 N. Y. 98.

Independently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights unreasonably long, and shows no excuse for having done so.   Recent applications of the doctrine by the supreme court are found in Hanner v. Moulton, 138 U. S. 486, 11 Sup. Ct. 408;  Richards v. Mackall, 124 U. S. 183, 8 Sup. Ct. 437;  Hammond v. Hopkins, 143 U. S. 224, 12 Sup. Ct. 418;  Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873;  Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78;  Abraham v. Ordway, 158 U. S. 416, 15 Sup. Ct. 894.   The complainant was aware of his rights—at least, had sufficient knowledge to put him upon inquiry—at the time he commenced the suit against Roberts, which he afterwards abandoned.   No excuse is suggested in the bill or in the statement of facts for the delay of nearly 18 years which subsequently intervened before the bringing of this suit.   It is improbable that he omitted to investigate when the interest was not paid upon his bonds, and, as has been stated, none was paid except upon the coupon which matured September 1, 1867.   As was said in Sharpe v. King, 3 Ired. Eq. 402, 405, "An equity court is no more bound to take care of those who can take care of themselves, and will not, than is a court of law."   The case is destitute of any features which should appeal to the special consideration of a court of equity.

We have not alluded to some facts alleged in the bill, and contained in the statement of facts, which were injected into the case upon the theory that there was a trust fund in the hands of the defendants, growing out of the bonds acquired by Roberts.   With the failure to establish the averments of fraud, the theory of a trust fund collapses; and, had the point been taken, it would have been the duty of the court below to dismiss the case as one not cognizable in equity, because the complainant had a complete and adequate remedy at law.   Alsop v. Riker, supra.

The learned judge who heard the cause in the court below seems to have considered that the representation made by Roberts in the certificate was, in effect, a continuing warranty that the bondholders should have the benefit of a security by mortgage, and that

the cause of action did not arise until the time of maturity of the bonds. There was no promise or representation except as to an existing state of facts. The statement in the certificate was literally and exactly true. The bonds were secured by a mortgage, and there was no statement that the mortgage had been recorded. The mortgage was a lien upon the real estate covered by it, but a lien which was subject to be postponed to those which might thereafter arise in favor of creditors or subsequent purchasers for value and without notice.

The decree is reversed, with costs, and the cause remitted, with instructions to dismiss the bill.