FRISHMUTH et al. v. FARMERS' LOAN & TRUST CO.

(Circuit Court, S. D. New York. June 22, 1899.)

1. RAILROAD MORTGAGE—DUTIES AND LIABILITIES OF TRUSTEE.

The duties assumed by a trustee to whom a railroad mortgage is made for the benefit of bondholders are not those only which are defined by the instrument, but others are superimposed on the trustee, created by the relations of the parties and the situation of the trust fund. The trustee, while selected by the mortgagor, represents as well those who may become the holders of the bonds, and is bound to act in good faith, and exercise reasonable care and prudence for the protection of their interests. Where, at the time a mortgage is made, the company is without substantial property aside from its franchises, and the security is practically to be created by the use of the proceeds of the bonds which are to be issued by the trustee to the company from time to time, the proceeds to be used for specified purposes, and the company notably fails to comply with the requirements of the mortgage, diverting the proceeds of bonds received, a further issuance of bonds to it without taking measures to see that they are properly applied is a breach of the trust for which the trustee can be held liable by the bondholders.

2. PARTIES—SUIT AGAINST MORTGAGE TRUSTEE.

In a suit by holders of railroad bonds against the trustee in the mortgage to recover for negligent administration of the trust, the mortgagor is not a necessary party.

3. SAME.

Such a suit must be brought on behalf of all the bondholders similarly affected, and who may choose to come in, and cannot be maintained by individual bondholders in their own behalf alone.

4. LIMITATION OF ACTIONS—SUIT AGAINST TRUSTEE.

A suit against a trustee for a breach of implied duties, and which is not brought to recover property or funds in his hands, is subject to the bar of limitation, and a federal court of equity in such case will follow the statute of limitations which would govern state courts having concurrent jurisdiction of the suit.

On Demurrers to Bill.

Silas W. Pettrot, for complainants.
David McClure, for defendant.

WALLACE, Circuit Judge. The complainants, owners of certain mortgage bonds created by the Oregon Pacific Railroad Company, allege by their bill of complaint that by the neglect and breach of duty of the defendant, the trustee named in the mortgage, they have wholly lost the amount represented by their bonds, and pray for discovery and an accounting. The bill was filed in January, 1899. The defendant, by demurrers, objects that the bill does not disclose a cause of action; that there is a defect of parties defendant; that there is a defect of parties complainant; that the suit is barred by the statutes of limitation; and that the laches of the complainants, in view of the facts set forth in the bill, preclude any recovery.

The mortgage, or trust deed, is set out in full in the bill of complaint. It was executed October 1, 1880, by the Oregon Pacific Railroad Company as party of the first part, the defendant as party of the second part, and the Willamette Valley & Coast Railroad Company as party of the third part, to secure an issue of 15,000 bonds of the denomination of $1,000 each, of that date, payable October 1, 1900, with interest semiannually, reciting upon the face that they were "limited in issue to $25,000 per mile" of railroad.

The Willamette Valley & Coast Railroad Company (hereafter called the "Willamette Company") was incorporated with authority, among other things, to construct a railroad from Corvalis to Yaquina Bay, in the state of Oregon; had acquired by grant from that state certain lands situate in Benton county, and was entitled to appropriate other lands of the state for station buildings, depots, workshops, etc.; and was also entitled to acquire by the payment of $600,000 a grant from the state of Oregon to the Willamette Valley & Cascade Mountain Wagon-Road Company (hereafter called the "Wagon-Road Company") covering about 850,000 acres of land. The Oregon Pacific Railroad Company (hereafter called the "Oregon Company") was incorporated with authority, among other things, to construct and operate a railroad from Yaquina Bay to Bois City, in the state of Oregon; to construct the railroad of the Willamette Company, acquire it, and operate it; and to construct or acquire water craft, and operate the same in connection with its railroads. To secure the payment of the 15,000 bonds created by the Oregon Company, that corporation and the Willamette Company joined in the mortgage, and conveyed to the defendant, in trust, and upon the covenants therein expressed, their franchises and all their property then existing or thereafter to be acquired. At the date of its execution neither the Oregon Company nor the Willamette Company had any railroad constructed, or had any other property of value to which the lien of the mortgage could attach, except the franchises and land grant of the Willamette Company, and the right of that company, by the payment of $600,-000, to become owner of the 850,000 acres of land included in the grant to the Wagon-Road Company. By the terms of the mortgage the bonds were not to become valid obligations until certified by the trustee, and they were to be deposited by the Oregon Company with the defendant to be certified and issued from time to time, at the request of the Oregon Company, as the same should be sold or otherwise disposed of. The mortgage contained covenants on the part of the Oregon Company to do or cause to be done all the acts and things necessary and proper to preserve intact the lien of the mortgage upon all the property conveyed, and to perform all such further acts as the trustee should deem proper and expedient for more effectively securing the payment of the bonds; to apply the proceeds arising from the first 3,250 bonds issued to it by the trustee first to the payment of the $600,000 necessary to enable the Willamette Company to acquire the land grant of the Wagon-Road Company, next to the construction and equipment of 130 miles of railroad from the ocean eastward, and thereafter any surplus, as well as the proceeds of all the other bonds issued to it by the trus-

tee, to the construction and equipment of the rest of its railroad, the purchase of water craft, and the general purposes of its incorporation. The Oregon Company also covenanted to deposit with the trustee the sum of $30,000 in each year, commencing with the year 1883, to be invested by the trustee as a sinking fund for the purchase of the bonds; and to pay the bonds, principal and interest, according to their terms.

The provision of the mortgage authorizing the defendant to issue the bonds reads as follows:

"The said trustee may certify and issue any of the said bonds at any time on the request of the party of the first part in writing, and the net proceeds which may be realized upon the sale shall be paid over to, and remain in the hands of, the said trustee for the purposes above enumerated, and shall be paid out only on the written order of the executive committee of the board of directors of the party of the first part, and all such orders shall include a statement declaring the purpose or purposes for which the proceeds of the bonds so ordered to be paid over are to be appropriated or used; provided, however, that, in case the party of the first part shall desire to apply any of the said bonds for the purposes of its incorporation without converting the same into money, it shall furnish the said trustee with a like written order of the said executive committee, which shall include a written statement declaring the purpose or purposes for which the said bonds are to be appropriated or used, and in that case the said trustee shall certify, issue, and deliver the said bonds. Nothing herein contained shall be so construed as requiring the said trustee to inquire into the application of the funds or the bonds which it may deliver over upon the receipt of such orders as aforesaid."

The mortgage contained the usual provisions in case of a default in the payment of the principal or interest of the bonds, authorizing the trustee, upon the request of the holders of one-fourth of the then outstanding bonds, to enter into and take possession of the mortgaged property, and receive the earnings and income thereof, and for the foreclosure and sale of the mortgaged property; and it provided that in case of a foreclosure sale the trustee might become the purchaser, might procure the organization of a new corporation for the benefit of the holders of the bonds upon such terms as a majority of the bondholders should request, and should aid and promote in all lawful ways any plan for such a reorganization. It also contained the following provision:

"That the party of the second part, and its successors or successor, in the trust hereby created, shall be responsible only for reasonable diligence in the management thereof, and shall not be accountable in any case for the act or default of any agent, attorney, or employé, when such person shall have been selected with reasonable discretion; and the party of the second part, its successors or successor, shall be entitled to be reimbursed all its proper outlays of any sort and nature by it incurred in the discharge of this trust after the execution of these presents, including reasonable attorneys' and counsel fees incurred in that behalf, and shall be entitled to receive a reasonable and proper compensation for any duty it may at any time perform in the discharge of the trusts hereby created."

The bill alleges that in May, 1881, the defendant certified and delivered to the Oregon Company 3,250 of said bonds; that the order for the bonds did not contain any declaration of the purposes for which they were to be used, except the general one that they were to be "appropriated or used in the purchase of necessary materials for the construction of its lines and the discharge of its obligations,

and for other proper purposes of its incorporation"; that at the time of certifying and delivering these bonds the right to acquire the land grant for the 850,000 acres had expired, and the defendant was aware of the fact; that the Oregon Company did not construct the 130 miles of railroad from the Pacific Ocean eastward, but did build and equip only about 72 miles of said projected railroad, which was commenced about July, 1881, and completed about October, 1884, and which did not cost the proceeds of 25 bonds per mile; that in December, 1884, the defendant, with knowledge that said railroad had not been constructed, and that the land grant for the 850,000 acres had not been acquired, issued and delivered to the Oregon Company 1,000 more of the bonds, and shortly afterwards 3,750 more, and subsequently, and in June, 1885, all of the remainder of the 15,000 bonds; that the orders upon which all the bonds were thus issued contained only a statement of the purposes for which they or their proceeds were to be appropriated like that contained in the first order; that after the certification and issue of the 15,000 bonds, although the construction of the railroad by the Oregon Company was proceeded with in an inefficient way, only 10 more miles of railroad were constructed and equipped until 1886, and 60 miles more by the fall of 1889; that the proceeds of 11,000 of the bonds were not appropriated by the Oregon Company to the acquisition, construction, or betterment of the mortgaged property, or for any of the purposes in the mortgage declared; that in October, 1890, the Oregon Company became insolvent, and defaulted in paying the interest upon the bonds, and the defendant brought its action for the foreclosure of the mortgage and the appointment of a receiver of the mortgaged property, and in December, 1894, the mortgaged premises were sold under a decree of sale in the action to parties who purchased for their own benefit, and not for that of the holders of the bonds, and a deed of conveyance was executed and delivered to the purchasers, and thereby the holders of the bonds wholly lost all the benefit and security of the mortgage.

If the facts thus set forth by the bill of complaint are true,—and for present purposes they must be assumed to be true,—it would seem to be clear that a good cause of action is stated, and that the first demurrer is not well taken. The duties assumed by one to whom a railroad mortgage is made for the benefit of bondholders are not those only which are defined by the terms of the instrument. Others are superimposed upon the trustee, created by the relation of the parties and the situation of the trust fund. Although selected by the mortgagor, the trustee is selected to represent as well those who may become the holders of bonds. No one but the trustee can enforce the covenants and conditions of the mortgage, or take proper measures to protect the interests of bondholders in respect to matters not provided for by the terms of the instrument. When the mortgage debt is amply secured, the duties of a trustee are ordinarily merely nominal until a default occurs in complying with the conditions of the mortgage. In this case, however, the security was practically in nubibus at the inception of the trust, and was to be created by the co-operation of the defendant and the Oregon Company. It was to be

constituted an adequate security by the acquisition of property by the Oregon Company through the proceeds of the bonds to be issued by the trustee. The mortgage was sedulously framed and expressed to induce investors to purchase the bonds upon the faith that such property would be acquired with the proceeds, and that, as the bonds were issued by the trustee, the proceeds would be devoted by the Oregon Company, under the supervision of the trustee, to feed the security, and satisfy the promises set forth in the bonds and in the mortgage covenants. The statement in the bonds that the issue was to be limited to $25,000 per mile of railroad was a promise by the Oregon Company that there should be a mile of completed railroad for every $25,000 of bonds issued. This statement, and also the covenant in respect to the application of the proceeds of the first bonds to be issued, were obviously inserted to assure investors that the security would be adequately augmented concurrently with the issue of the bonds. The only possible object of the provision restricting the trustee from delivering the bonds or their proceeds to the Oregon Company except on orders declaring the purposes for which they were to be used was to satisfy investors that the trustee was to supervise the operations of the Oregon Company in respect to the purposes to which it intended to make application of the proceeds, and thus effectuate the promises of that company. The several provisions imply the power and the duty of the trustee to refuse to issue bonds except when supplied with evidence that the avails are to be used conformably with the promises of the Oregon Company. The defendant cannot escape responsibility to those who have bought the bonds upon the theory that the mortgage does not contain any covenants by the trustee prescribing its conduct, except in the event of a default in payment. They are entitled to hold the defendant to the performance of the duties which, from the import of the provisions, they had a right to suppose the trustee would perform. While its terms exonerate the trustee for a misapplication after it has delivered the bonds or proceeds to the Oregon Company upon orders of the requisite character, they do not absolve it further. They certainly do not protect the trustee in delivering bonds or proceeds which it knows, or has reason to believe, are not to be applied properly. The instrument is not to be construed as authorizing the trustee to deliver the bonds or their proceeds upon orders containing such vague and indefinite declarations as were inserted in those given by the Oregon Company. Upon such a construction the provision conferring authority would afford no security for the bondholders, and would be a mere sham. It was intended to restrict the trustee from delivering bonds or proceeds without information of the specific uses to which, from time to time, they were being applied, in order to enable the trustee to ascertain whether they were being expended conformably to the promises of the Oregon Company.

If the facts alleged in the bill of complaint are true, the trustee was aware, when every one of the 15,000 bonds, after the first 3,250, were delivered to the Oregon Company, that the proceeds of the first issue had not been used as the Oregon Company had covenanted to use them, and that the promises of that company had been wholly ignored.

Under these circumstances, what would have been done by a prudent mortgagee for the protection of his own interests? Would he not have refused to enlarge the mortgage debt? Or if, for any reason he concluded it might be expedient to do so, would he not have taken active measures to see that any further advances were not misapplied? It is to be observed that the trustee had no power under the mortgage to negotiate the bonds, and, so far as appears, it was not possessed of any funds; and it may be that the circumstances of the situation were such that it was desirable to go on with the construction and equipment of the railroad, and that the only practicable course was to issue more bonds to enable the company to do so. But no prudent man would thereafter have permitted the application of the proceeds to be intrusted to the unlimited control of the Oregon Company. This must have been permitted if the facts alleged in the bill are true. In the absence of any exculpatory facts, the allegations of the bill warrant the conclusion that the losses are to be attributed to the defendant which resulted from the issue of every bond delivered to the Oregon Company after the first 3,250; not only those sustained by the purchasers of the later issues, but also those by the holders of the first issue because their fund was depleted to the extent of the further lien to which it was subjected. For these reasons the first demurrer is overruled.

The second demurrer asserts that the Oregon Company and the Willamette Company are necessary parties to the cause. No relief is asked against either of these parties, and no reason appears why they should be joined as defendants with the trustee.

The third demurrer is sustained, because the action cannot be maintained by the complainants alone. The action does not purport to be brought in behalf of all the bondholders, similarly situated, who may choose to come in. The defendant ought not to be subjected to separate suits by the several parties having a common interest in the subject-matter.

The fourth and fifth demurrers object that the suit is barred by statutes of limitation. This defense can be raised by demurrer in an equity cause. Story, Eq. Pl. § 484. According to the averments of the bill, the last of the entire issue of bonds were delivered by the defendant to the Oregon Company in June, 1885, 14½ years prior to the commencement of the action. While the equity jurisdiction of the courts of the United States is subject to neither limitation nor restraint by state legislation, and is uniform throughout the different states of the Union, these courts, like all courts of equity, feel themselves bound, in all cases of concurrent jurisdiction, by the statutes of limitation that govern courts of law in similar circumstances; and whether they act in analogy or in obedience to those statutes is not of practical moment. As a general rule, length of time is no bar to a trust clearly established, and express trusts are not within the statute of limitations, because the possession of the trustee is presumed to be in the possession of his cestui que trust. That rule, however, has no application to a case like the present, where the breaches alleged are of implied duties, and where the action is not brought to recover funds or property in the possession of the trustee. Lewis v. Hawkins,

23 Wall. 126; Williams v. Halliard, 38 N. J. Eq. 373–378; Spering's Appeal, 71 Pa. St. 11. The case is controlled, as regards this defense, by the authority of Miles v. Vivian (decided by the circuit court of appeals for this circuit) 25 C. C. A. 208, 79 Fed. 848.

The averments of the bill in respect to the conduct of the defendant after the Oregon Company became insolvent and defaulted in paying the interest upon the bonds fail to disclose any breach of duty by the trustee. For all that appears, the defendant acted properly. The foreclosure suit was properly instituted and conducted. There was no request on the part of the bondholders that the trustee should purchase the premises, and the trustee was not called upon to aid or promote any plan of reorganization. The bill is destitute of facts disclosing any breach of duty which did not occur at a time within the bar of the statute limitations. The fourth and fifth demurrers are sustained.

The sixth and seventh demurrers set up the defense of laches as an equitable bar to the suit upon the facts alleged in the bill. The bill avers that it was not until 1893, upon the receipt of the report of experts employed by a committee of the bondholders, that the complainants knew, or had reasonable cause to suspect, that the defendant had issued or delivered bonds in violation of its duties as a trustee under the mortgage. The Oregon Company did not default in paying interest upon the bonds until October 1, 1890, and the defendant began its action for the foreclosure of the mortgage October 26, 1890. Until that time the bondholders probably had no reason to suppose that the trustee had been derelict in its duties. It cannot be safely concluded that the time which intervened before the investigating committee completed its labors and made its report sanctions the imputation of laches. The question cannot be satisfactorily determined upon the meager facts which are before the court. If the bondholders were not guilty of laches until they were informed of the facts by the report, inasmuch as this action was brought within six years thereafter, the defense is not established. These demurrers are therefore overruled.

Another demurrer interposed by the defendant is that the cause of action is cognizable at law. In view of the character of the accounting which is involved upon the theory of the bill, it hardly seems that this objection can be seriously urged. The demurrer is overruled.

An order will be entered sustaining the third, fourth, and fifth demurrers, and overruling all the others, and dismissing the bill, unless the complainants see fit by amending the bill to obviate the objections assigned.