ROTHCHILD v. MEMPHIS & C. R. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. February 10, 1902.)

No. 966.

1. RAILROAD—CORPORATIONS—STOCKHOLDERS—TENANTS IN COMMON—TRUST RELATION—JUDICIAL SALE—PURCHASE OF PROPERTY.

Where a stockholder of a railroad corporation, though owning a majority of the stock, does not actually control the affairs of the company for his own benefit and to the prejudice of the minority stockholders, he does not occupy a trust relation towards them, and, as they are not tenants in common, he may purchase the property of the corporation at a judicial sale for his own benefit, if there be no actual fraud.

2. SAME—ACTION TO AVOID SALE—LACHES.

Where the minority stockholders of a railroad made no objection to a judicial sale of the property to the majority stockholder and no effort to protect themselves for 17 months, and until the purchaser had expended large sums in the payment of debts and improvement of the property, an action to avoid the sale was then too late.

3. SAME—PURCHASE BY ANOTHER ROAD—POWER TO HOLD—RIGHT TO QUESTION.

Where at a judicial sale of a Tennessee railroad it was purchased by a railroad company incorporated in Virginia, which had filed its charter in Tennessee, and was authorized to make the purchase under Acts Tenn. 1881, c. 9, § 2, providing that a railroad may acquire another road by purchase, after the sale is confirmed and title vested in the purchaser, the state alone can question the purchaser's power to hold such title.

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

A bill was filed in the circuit court for the Western district of Tennessee by the complainant, who is a stockholder in the Memphis & Charleston Railroad Company, on behalf of himself and all other stockholders desiring to become parties complainant, against the Memphis & Charleston Railroad Company and the Southern Railway Company. The purpose of the bill is to have the title of the Southern Railway Company to the property and franchises of the Memphis & Charleston Railroad Company, purchased at a foreclosure sale, declared to be held in trust for the benefit of the shareholders of the Memphis & Charleston Railroad Company. The bill states: That in January, 1892, nearly if not all of the lines of the Southern Railway Company in the state of Tennessee were owned and operated by

the East Tennessee, Virginia & Georgia Railway Company. That said last-named corporation owned as its main line a railway extending from Chattanooga, Tenn., via Morristown, to Paint Rock, N. C., where it connected with the lines of railroad forming the Richmond & Danville Railroad system, and such main line furnished said Memphis & Charleston Railroad at Chattanooga its main connection and outlet for the business of the Mississippi valley and beyond, which it received at Memphis. In addition thereto, prior to said 1st of January, 1892, said East Tennessee, Virginia & Georgia Railway Company had acquired and owned 106,264 shares of the capital stock of the Memphis & Charleston Railroad Company, the same being a majority of all its shares. By means of such ownership said East Tennessee, Virginia & Georgia Railway Company controlled said Memphis & Charleston Railroad Company. It elected its board of directors, a majority of whom were officers and directors of said Tennessee company. Its operating and traffic departments were under the control of the same persons, who were in control of the operating and traffic departments of the East Tennessee, Virginia & Georgia Railway Company, and it was entirely subordinated to said East Tennessee, Virginia & Georgia Railway Company, and under its control as a part of its system. That said East Tennessee, Virginia & Georgia Railway Company, through the ownership of large blocks of its stock, was closely allied with the Richmond & West Point Terminal Railway & Warehouse Company, having a majority of its directors in said last-mentioned company. And it alleges: That said last-mentioned company owned all of the capital stock except 22 shares of the Richmond & Danville Railroad Company, and that during the month of July, 1892, said Richmond & West Point Terminal Railway & Warehouse Company, said Richmond & Danville Railroad Company, said East Tennessee, Virginia & Georgia Railway Company, and the Memphis & Charleston Railroad Company were put into the hands of receivers in the several United States circuit courts having jurisdiction. That at the time the various bills were filed the complainant in the suit against the Memphis & Charleston Railroad Company was the chairman of the board of directors of the East Tennessee, Virginia & Georgia Railway Company, and filed the bill as a creditor in behalf of himself and all other creditors and stockholders. That the receivers took possession without resistance to their appointments, and that subsequently, on the 25th of November, 1893, the Central Trust Company of New York filed its bill against the Memphis & Charleston Railroad Company in the same court in which the receivers were appointed to foreclose a mortgage securing an issue of $1,000,000 of bonds, claiming default in the payment of interest. On the 25th of August, 1895, the Farmers' Loan & Trust Company likewise filed in said court its bill to foreclose a mortgage executed by the Memphis & Charleston Railroad Company to secure an issue of $2,264,000 of bonds. That, in order to reorganize and bring all of the railroad companies hereinbefore mentioned under the ownership and control of one corporation, a committee was appointed, who had incorporated, under the laws of Virginia, the Southern Railway Company, with authority to receive, hold, and operate the properties intended to be acquired. Under the sale of the property of the East Tennessee, Virginia & Georgia Railway Company the Southern Railway Company, with their other assets, acquired the 106,264 shares of the stock of the Memphis & Charleston Railroad Company, above mentioned. This sale was duly confirmed on the 14th of July, 1894, and the bill alleges that the Southern Railway Company has ever since owned said stock, and thereby controls the corporate action of the Memphis & Charleston Railroad Company, occupying a trust relation to the minority stockholders, and could take no action in regard to the Memphis & Charleston Railroad Company or its property, except as trustee for the equal benefit of itself and all its fellow stockholders therein; that the Southern Railway Company, being in the position of a tenant in common with the other stockholders, set about acquiring the property of the Memphis & Charleston Railroad Company for its own use, to wipe out the interest of the minority stockholders therein; and that, if the Southern Railway Company had used its power as a majority stockholder for the purpose of having the Memphis & Charleston Railroad Company refund its debt at a lower rate of interest, and operate

its property to the best advantage, said railroad company could have saved to the stockholders a large part of the face value of their stock. But the bill alleges that, instead of so doing, the Southern Railway Company entered into an agreement, for its own benefit, with the holders of the securities of the Memphis & Charleston Railroad Company to have the property sold and bought in by the Southern Railway Company; that to carry out this plan the Southern Railway Company, instead of operating its lines in a way calculated to promote the business of said Memphis & Charleston Railroad Company, which was dependent thereon, and although such manner of operation would have been to the interest of the business of the Southern Railway Company as a common carrier, it so operated its other lines as to decrease the earnings of the Memphis & Charleston Railroad Company, and cut it off from business, and seriously embarass the operations of its receivers, which .conduct was for the sole purpose of decreasing the value of the Memphis & Charleston Railroad so that it could be obtained at the lowest possible price; that while the Memphis & Charleston Railroad was in the hands of receivers, although its earnings were sufficient to have paid and kept down the interest on the mortgage bonds and prevented the maturity thereof, said earnings were used by the receivers at the instance of the parties controlling the East Tennessee, Virginia & Georgia Railway Company, and afterwards the Southern Railway Company, to thoroughly repair and put in use said Memphis & Charleston Railroad, and the charges were, in the main, reported as operating expenses, so as not only to greatly enhance the intrinsic value of the property, but at the same time to. create the impression that its earning capacity had greatly diminished, and also to suffer its bonded debt to become entirely in default; that a decree of foreclosure in the suit wherein the Central Trust Company of New York was complainant was entered, under which the property of the Memphis & Charleston Railroad Company was sold on the 26th of February, 1898, and the property was purchased by the Southern Railway Company for $2,500,000, the upset price named in the decree, and, said sale being confirmed by the court, the Southern Railway Company became the owner of the said Memphis & Charleston Railroad and all its property and franchises. The bill sets out that the Southern Railway Company, being incorporated under the laws of the state of Virginia, has no power to operate the Memphis & Charleston Railroad, nor to own its stock; that the Memphis & Charleston Railroad does not connect with any line of railroad owned by the Southern Railway Company, and that its ownership, operation, or lease. or the ownership of a majority of its capital stock, would be without the authority of the laws of the states in which its railroad lies, and from which the franchises to operate the same are derived, and that the sale is therefore illegal and void; that the said Southern Railway Company holds the property so purchased by it as a trustee for itself and for all other stockholders of the Memphis & Charleston Railroad Company, subject alone to the payment of such sums of money as said Southern Railway Company has lawfully expended in the purchase of the same, and in payment of pre-existing debts.

The answer of the defendant Southern Railway Company denied every material allegation of the bill through which it was sought to charge it .with conspiracy, fraud, or misconduct, actual or constructive, and alleged that neither the complainant nor any of his associate stockholders were willing or ever offered to pay or bear any of the obligations of the Memphis & Charleston Railroad Company; that that railroad company, from the 15th day of July, 1892, until the sale mentioned in the bill of complaint, was in the hands of receivers of the federal court, and that at the sale, it having complied with the laws of Tennessee in that behalf, the Southern Railway Company was enabled to and did purchase the property of the Memphis & Charleston Railroad Company without regard to its ownership of 106,264 shares of its capital stock, which at that time was without real or potential value; that while the Memphis & Charleston Railroad Company was in the hands of receivers neither the defendant nor any party controlling it made any suggestion to the receivers in regard to the application of the earnings of the said railroad, nor did they change any relations which had previously existed between the East Tennessee, Virginia &

Georgia Railway Company and the Memphis & Charleston Railroad Company, nor did they discriminate against the Memphis & Charleston Railroad Company, but dealt with the receivers as it did with every other connection of the defendant; that the receivers made yearly reports to the court, and the management of the property was controlled by the court without any interference or suggestion from the defendant or any person controlling it; that since the sale the defendant has been in possession of and engaged in the operation of the Memphis & Charleston Railroad Company, and has expended large amounts of money in the maintenance of the road; that all of the proceedings leading up to its purchase and ownership of the Memphis & Charleston Railroad were consummated publicly and in the due and orderly course of business, with the knowledge of the complainant and other stockholders of the Memphis & Charleston Railroad Company, none of whom offered to intervene or participate in or bear any part of the expenses of such purchase, or in any other way unite with the defendant in the acquisition of said railroad property.

After proofs were taken and a hearing had, a decree was entered in the circuit court dismissing the bill, from which decree the complainant appealed to this court.

Tully R. Cornick and W. B. Henderson, for appellant.

Frank P. Poston, for appellee.

Before LURTON and DAY, Circuit Judges, and WANTY, District Judge.

WANTY, District Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The proofs in this case fail to show any actual fraud on the part of the Southern Railway Company before or at the sale, or any actual control by it of the Memphis & Charleston Railroad. The road was in the hands of receivers appointed by the court from July 14, 1892, until the sale was made on the 26th of February, 1898. The defendant Southern Railway Company was not organized until 1894, and there is nothing in the proofs from which any manipulation of the affairs of the Memphis & Charleston Railroad by the Southern Railway Company since its organization, or by its stockholders before its organization, can be inferred. The relief, in the absence of this proof, must be founded on the allegations in the bill "that the relations of said Southern Railway Company and of your orator and the other stockholders of said Memphis & Charleston Railroad Company at the time when said sale took place (the said Memphis & Charleston Railroad Company having abdicated its functions of controlling said property, and it and its board of directors being entirely under the control of the Southern Railway Company) were the same as those of tenants in common, and the said Southern Railway Company could not acquire any right, title, or interest in the said property, except for the equal and common benefit of itself and the other stockholders of said Memphis & Charleston Railroad Company; and that the Southern Railway Company, a foreign corporation, did not have the right in law to become the purchaser of the Memphis & Charleston Railroad Company's property."

1. Stockholders are not tenants in common of the property of the corporation, and a stockholder, as such, even though he owns a majority of the stock, does not occupy a trust relation toward the other stockholders, and he may deal with them or with the corporation in good faith. In order to establish a trust relation, the ma-

jority stockholder must actually control the affairs of the company for his own benefit and to the prejudice of the minority stockholders. If he is not in control of the property, and does not mismanage it to the prejudice of the minority stockholders, he may purchase, if there is no actual fraud, the property of the corporation at a judicial sale for his own benefit, and he is not accountable to any other stockholder for the property so purchased. In Mickles v. Bank, 11 Paige, 127, 128, 42 Am. Dec. 103, Chancellor Walworth uses this language, which seems apt when applied to the facts here, and has long been indorsed by courts and text writers:

"The principal object of the bill appears to be to set aside the sales of the property of the corporation upon the ground that the sales were invalid. In this the complainant must necessarily fail upon the allegations of the bill, even if the corporation is made a party; for the sales were valid, and gave a good title to the purchaser. And one stockholder of a corporation has a perfect right to become a purchaser, for his own benefit, at a sheriff's sale of the corporate property upon an execution against the corporation; nor is he accountable to any other stockholder for such property if there is no fraud in the sale, even where the property is bought in by him much below its value. The remedy of the other stockholders is to attend the sale upon the executions, and bid up the property to its cash value, and thus prevent the same from being sacrificed. The stockholders of a corporation are neither tenants in common of the corporate property nor copartners, either before or after the dissolution of the corporation."

There is nothing in the proof in this case from which it can be found that the Southern Railway Company ever operated or controlled the property of the Memphis & Charleston Railroad Company, so that no mismanagement of its corporate affairs for the purpose of obtaining advantage at the expense of the minority stockholders can be attributed to it. The sale of the property was not brought about through its manipulation, and it is not shown that the property did not bring a fair price. If the minority stockholders desired to become purchasers, they could have devised a plan of reorganization, and bid in the property if it did not bring what they thought was its full value at the sale. Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328. This the complainant did not do, but waited until after the sale had been made and confirmed, and the purchaser had been in possession of and operating the property from February 26, 1898, until August 7, 1899, when he filed this bill, the allegations of which would, if action had been promptly taken, have brought the defendant Southern Railway Company within the principles laid down in the cases holding the majority stockholder a trustee in the purchase of the corporate property for the benefit of all of the stockholders of the corporation. But the proofs lack the essential elements of control and mismanagement, without which the relief could not be given, even if the bill had been seasonably filed. The allegations of control, mismanagement, and fraud are emphasized throughout the bill of complaint, but seem to be wholly lacking in the proof, the complainant apparently relying on the position that, when it is shown that a person holding a majority of the stock of a corporation purchases all of its property, there is a presumption of fraud which makes him a trustee for all of the stockholders, and proof of fraud becomes unnecessary. No case in the large number cited by counsel for the complainant justifies this posi-

tion. In each one there had been actual fraud in the control and mismanagement of the property for the purpose of bringing about its acquisition by the majority stockholder. It is true that every transaction of a majority stockholder with the corporation will be viewed by the courts with jealousy, and set aside on slight grounds; but it is not void, and, if the relations of the majority stockholder are fair and open, there is no rule which forbids his dealing with the corporation, and no presumption that such dealing is fraudulent. The actual control of the property, which is the basis in all of the cases of the trust relation, not existing, and the sale not having been brought about by the fraudulent action of the defendant, it did not, by its purchase, become a trustee for the complainant and other stockholders of the Memphis & Charleston Railroad Company. Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; McKittrick v. Railroad Co., 152 U. S. 473, 14 Sup. Ct. 661, 38 L. Ed. 518; Rogers v. Railway Co., 33 C. C. A. 517, 91 Fed. 313; Gillett v. Bowen (C. C.) 23 Fed. 625; Lucas v. Friant, 111 Mich. 426, 69 N. W. 735; Bank v. Walker, 66 N. Y. 424; Spurlock v. Railway Co., 90 Mo. 200, 2 S. W. 219; Price v. Holcomb, 89 Iowa, 123, 56 N. W. 407; Thomp. Corp. §§ 1071, 1076, 1079; Cook, Corp. §§ 6, 653.

There is nothing in the case of Farmers' Loan & Trust Co. v. New York & N. R. Co., 150 N. Y. 410, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689, which is relied upon by this complainant, at variance with these views. In that case the New York Central & Hudson River Railroad Company purchased a majority of the stock and bonds of the New York & Northern Railway Company, and while its officers were in control of the New York & Northern Railway Company they declined to accept traffic from other roads that would have produced a fund with which to pay the interest on the bonds; the income of the road which should have been employed to pay the interest was diverted to other and improper purposes, which action occasioned the inability of the company to meet its obligations, the default in which resulted in the foreclosure suit. After making an elaborate review of the authorities, Judge Martin, for the court, states the rule as follows:

"The principle of these authorities renders it quite obvious that a corporation purchasing a majority of the stock of another competing one cannot obtain control of its affairs, divert the income of its business, refuse business which would enable the defaulting company to pay its interest, and then institute an action in equity to enforce its obligations, for the avowed purpose of obtaining entire control of its property to the injury of the minority stockholders."

The elements of control and mismanagement there existed, and were the basis upon which the judgment rested, and will be found in the cases reviewed by Judge Martin, and in the cases urged by counsel for complainant here. Their absence in this case is fatal to the appellant's contention.

2. The minority stockholders, as the proof shows, with the full knowledge of all of the proceedings culminating in the sale, made no objection, but permitted the property to be sold to the Southern Railway Company for a large sum, and that company to expend a

large amount of money in its improvement, without making any effort to impeach the sale until the filing of this bill. There is no excuse given for this delay, and the complainant would have thereby lost any right to the relief sought, if he ever had any. Oil Co. v. Marbury, 91 U. S. 591, 592, 23 L. Ed. 328; Simmons v. Railroad Co., 159 U. S. 278, 16 Sup. Ct. 1, 40 L. Ed. 150; Miles v. Vivian, 25 C. C. A. 208, 79 Fed. 848–853; Harwood v. Railroad Co., 17 Wall. 81, 21 L. Ed. 558. In the case of Oil Co. v. Marbury, above cited, Justice Miller says:

"The doctrine is well settled that the option to avoid such a sale must be exercised within a reasonable time. This has never been held to be any determined number of days or years as applied to every case, like the statute of limitations; but must be decided in each case upon all the elements of it which affect that question."

3. The Southern Railway Company has filed its charter in the state of Tennessee, as provided by the laws of that state, and is thereby authorized to make the purchase of another railroad sold under judicial proceedings, as provided by its statutes. Acts Tenn. 1881, c. 9, § 2; Rogers v. Railway Co., 33 C. C. A. 517, 91 Fed. 299. The transaction has been executed, and the title has passed, and the state would be the proper party to now question the transaction, if it were illegal. In Rogers v. Railway Co., 33 C. C. A. 534, 91 Fed. 316, 317, this court, speaking through Judge Lurton, says:

"We do not think that this complainant, in his character as a stockholder of the Nashville, Chattanooga & St. Louis Railway Company, is in a position to make this question. The railroads in question were sold at a judicial sale. The purchaser at that sale has conveyed them by deed to the Louisville & Nashville Railroad Company. The transaction is an executed one, and the title has actually vested in the purchaser. * * * If the contract was in fieri, it might be open to a stockholder of the Louisville & Nashville Railroad Company as such, and upon a bill properly framed to restrain his company's officers from completing such an illegal transaction. But that is not this case. This is an executed transaction. The title has vested. It may be a defeasible title, but it has passed out of Phillips by his deed, and is vested in his conveyee. Until the state shall institute proceedings for the forfeiture of the charter, or for the purpose of defeating the title, it is a sound legal title, and will support this lease, unless it be subject to other objections."

The decree dismissing the bill was correct, and it is affirmed.