·SHAW *v*. COLE MFG. Co. *et al.* (Two Cases).

(*Jackson.*   April Term, 1915.)

CORPORATIONS.  Directors.   Nature of relation.   Purchase of
stock.

Directors may purchase stock from stockholders in a corpora-
tion, and do not, in making such purchases, occupy a fiduciary
relation; hence, where there was no fraud or concealment, the
stockholders cannot recover, though they sold their shares at
much less than their actual value.

Cases cited and approved: Stewart v. Harris, 2 Ann. Cas., 873;
Strong v. Repide, 213 U. S., 419; Percival v. Wright, 4 British
Ruling Cases, 792; Stewart v. Harris, 69 Kan., 498; Crowell v.
Jackson, 53 N. J. Law, 656; Rothchild v. M. & C. R. R. Co., 113
Fed., 476; Gillet v. Bowen, 23 Fed., 626; Walsh v. Goulden, 130
Mich., 531; Board of Com'rs v. Reynolds, 44 Ind., 509; Haarstick
v. Fox, 9 Utah, 110; Twin Lick Oil Co. v. Marbury, 91 U. S.,
588; Jackson v. Ludeling, 21 Wall., 616.

Cases cited and distinguished: Steinfeld v. Nielsen, 12 Ariz., 381;
Oliver v. Oliver, 118 Ga., 362; Deaderick v. Wilson, 67 Tenn., 108.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.
—F. H. HEISKELL, Judge.

H. N. LEACH and D. B. NEWSOM, for appellants.

JACKSON & McREE and WRIGHT & WRIGHT, for appel-
lees.·

Mr. Special Justice Wilson delivered the opinion of the Court.

These were suits brought by the Shaws for the purpose of recovering from defendants the difference between the sale price and the fair market price of shares of stock in the Cole Manufacturing Company, a finishing lumber mill, sold by the Shaws to W. I. Cole and T. R. Winfield; the first sale in March, 1907, and the latter in September, 1908.

Cole acted for himself and as Winfield's agent in buying the stock, and the representations complained of were made by him. Cole and Winfield were both directors and officers in the Cole Manufacturing Company.

We find:

1. The charge that dividends were suppressed, in order to obtain this stock, is not sustained, for the reason that the books, records, and condition of the company show that the company was not in financial situation to justify the payment of dividends at the times they were passed, until after the Shaws consummated the sales.

2. The evidence does not convince us, nor establish, that either of the Shaws was induced to make the sales by any misrepresentation of either defendant. Nor was there shown any concealment, or attempt at concealment, or suppression, of any material fact. The evidence does not convince us that any deceit was practiced which imposed on either complainant.

3. No special relation of trust and confidence was shown. Nor was it proven that special reliance was imposed by the sellers in the buyers. A memorandum more fully giving the reasons for these conclusions was filed.

4. It was suggested in argument, however, that as the book value of the shares, as shown by the books, and the value of its real estate, largely exceeded the price paid and market value or sale prices discussed, the purchasers could not buy from these stockholders without the fullest disclosure to them of all the facts, giving the stock value, because as directors they owed the Shaws the duties of a trustee to his beneficiary.

It is to be noted that the Shaws were fully aware they were dealing with officers and directors of the company.

While directors occupy a trust relation to the corporation which they direct, their duty does not apply to the stockholder in the sale and purchase of stock. Dealing in its own stock is not a corporate function. In buying or selling stock, directors may trade like an outsider, provided they do not affirmatively act or speak wrongfully, or intentionally conceal facts with reference to it. There is also the qualification that no other relation of trust exists between the parties.

This is the holding of a number of the British courts and the appellate courts of the States of New York, New Jersey, Illinois, Indiana, Michigan, Iowa, Pennsylvania, Rhode Island, Louisiana, Washington, and Utah.

See note to *Stewart* v. *Harris,* 2 Ann. Cas., 873; note to *Strong* v. *Repide,* 213 U. S., 419, 29 Sup. Ct., 521, 53 L. Ed., 853; note to *Percival* v. *Wright,* 4 British Ruling Cases, 792; where the authorities are collated.

Authorities are cited and quoted which hold that such trust relation exists, but when analyzed they are very few. *Stewart* v. *Harris,* 69 Kan., 498, 77 Pac., 277, 66 L. R. A., 261, 105 Am. St. Rep., 178, 2 Ann. Cas., 873, supports this view in its entirety. So does the case of *Steinfeld* v. *Nielsen,* 12 Ariz., 381, 100 Pac., 1094.

Subsequently, on a new hearing reported in 15 Ariz., 444, 139 Pac., 888, the supreme court of Arizona, modified the opinion of the territorial court, while holding the special facts established a trust relation.    It said:

"The general rule is that an officer or director may purchase the stock of his company from stockholders with the same freedom as a stranger, and, in so doing, the fact that he may be possessed of inside information as to the future plans and policies of his company is not permitted to militate against him, 'and, so long as he remains silent and does not actively mislead the person with whom he deals, the transaction cannot be set aside for fraud.' Cook on Corporations (5 Ed.), par. 320, page 707. *Crowell* v. *Jackson,* 53 N. J. Law, 656, 23 Atl., 426; *Rothchild* v. *Memphis & Charleston R. R. Co.,* 113 Fed., 476, 51 C. C. A., 310; *Gillet* v. *Bowen* (C. C.), 23 Fed., 626; *Walsh* v. *Goulden,* 130 Mich., 531, 90 N. W., 406; *Board of Com'rs* v. *Reynolds,* 44 Ind., 509, 15 Am. Rep., 245; *Haarstick* v. *Fox,* 9

Utah, 110, 33 Pac., 251; *Deaderick* v. *Wilson,* 67 Tenn. (8 Baxt.), 108; 2. Story's Eq., par. 1564; 4 Thompson on Corporations (2 Ed.), par. 4031.''

*Strong* v. *Repide* did not sustain the trust relation as existing in the purchase of stock by directors from stockholders, but for the purpose of the discussion recognized that ordinarily the trust relation did not exist, holding, however, the case exceptional, because of special facts of exclusive information of the managing director, who was in that case the purchaser, coupled with the fact of his insidious and careful concealment that he was, in fact, the real purchaser.

In *Oliver* v. *Oliver,* 118 Ga., 362, 45 S. E., 232, the trust relation was limited in its application to special information from the position, and where the court, in dealing with the duty of the director to disclose knowledge of the difference between the book value and the contract or market price of the stock, said:

''If the market or contract price of the stock should be different, from the book value, he (the director) would be under no legal obligation to call special attention to that fact; for the stockholder is entitled to examine the books, and this source of information, at least theoretically, is equally accessible to both.''

*Twin Lick Oil Co.* v. *Marbury,* 91 U. S., 588, 23 L. Ed., 328, and *Jackson* v. *Ludeling,* 21 Wall., 616, 22 L. Ed., 492, cited for the minority view declaring the trust relation, were cases which involved the purchase by directors of the corporate property, not its shares of stock, and naturally the directors are in the attitude

of trustees of the corporation's assets and property, which is an entirely different question from their relation to the shares of corporate stock.

Tennessee long since aligned itself with the vast majority of American decisions upon the subject, holding that a director in the purchase of the corporation stock does not owe the stockholder from whom he purchases the duties of a trustee to a beneficiary.

This was in *Deaderick* v. *Wilson,* 8 Baxt. (67 Tenn.), 108, followed in the memorandum opinion of this court in *H. S. Shaw* v. *Thos. R. Winfield,* decided at Jackson, at the April term, 1914.

The latter case is similar to the instant case in all its essential elements. Its decision would be controlling in the disposition of these causes; but we have carefully gone over the ground, in deference to earnest presentation by able counsel.

Much as courts of justice prefer that trades should be conducted on equal terms, with fair results, they cannot take from persons of full age their right to contract, nor upset their transactions without full proof of actual misrepresentation or concealment. So to do would unreasonably retard commercial dealings, and impair rather than improve the business welfare. Equally as strong is the duty to relieve seasonably against fraud when convincingly established. The latter is not the case before us.

On the whole record, in the instant case, it appears that these parties, in their anxiety to turn unproductive stock into concrete cash, sold it to unsentimental

and firm traders at much less than its ultimate value, because they could find no higher bidder.

The charges of fraudulent inducements to sale are not made out, and the chancellor's decree, dismissing both bills, will be affirmed.

The costs of appeal are taxed to the appellants, to be equally borne in each case.

JULIAN C. WILSON, Special Justice, sat in lieu of Hon. A. S. BUCHANAN, regular Judge, who was incompetent in these cases.