**Carlos JOHNS,
Plaintiff-Appellant-Cross-Appellee,**

v.

**Harold L. CALDWELL,
Defendant-Appellee,**

and

**Richard T. Moore, Sr.,
Defendant-Appellee-Cross-Appellant.**

Court of Appeals of Tennessee,
Western Section.

March 18, 1980.

Certiorari Denied by Supreme Court
June 23, 1980.

M. T. Weakley, Weakley & Weakley, Dyersburg, for Johns.

Joseph M. Boyd, Jr., Boyd & Boyd, Dyersburg, for Caldwell.

A. D. Walker, Jr., Walker & Walker, Dyersburg, for Moore.

EWELL, Judge.

Plaintiff, Johns, and defendant, Caldwell, in 1965 purchased from Newbern Hardware Company, Inc. (NHC) substantially all of the assets of a John Deere equipment dealership. After execution of the contract of sale but before the sale was consummated, K. E. Moore, controlling stockholder of NHC, insisted as a condition of going forward with the transaction that his son, defendant Moore, be given 10% ownership in the new business. Johns and Caldwell agreed to this condition and in view thereof elected to form a Tennessee corporation styled "Newbern Implement Company, Inc." (NIC). Initially, 1,100 shares of stock with a par value of $100.00 per share were issued to K. E. Moore (110 shares or 10%), defendant Moore (110 shares or 10%), plaintiff Johns (440 shares or 40%) and defendant Caldwell (440 shares or 40%). In May, 1965, the 110 shares of K. E. Moore were transferred to Johns (55 shares) and to Caldwell (55 shares), and thereafter the stock of NIC was owned by Johns (45%), Caldwell (45%) and Moore (10%) until 1978 when Moore agreed to sell his 10% to Caldwell for $36,000.00 in cash. Johns brought suit against Caldwell and Moore in the Circuit Court of Dyer County to prevent the transfer of stock or to require an equal division of Moore's stock between Johns and Caldwell. Judge Joe G. Riley Jr. heard the case without a jury and found for the defendants, dismissing the complaint. Plaintiff has appealed.

Judge Riley voluntarily filed in the cause below a "Memorandum of Decision" in which he succinctly sets forth his findings of fact and conclusions of law. The material facts are thoroughly reviewed and the controlling questions of law are separately addressed by Judge Riley, and to place the case in proper perspective we copy the "Memorandum of Decision" in toto:

The original Complaint in this cause prays that this Court prohibit the transfer of 110 shares of stock in Newbern Implement Company, Inc. Said complaint alleges that there was a confidential relationship between all three (3) of the parties to this suit, said parties being the stockholders of the corporation. The suit also asked the Court to declare the existence of a trust relationship between the three (3) stockholders. The essence of the Complaint is that Plaintiff Johns will suffer irreparable harm if Defendant Caldwell is allowed to purchase the stock from Defendant Moore, thereby giving Defendant Caldwell controlling interest in the corporation. Answers were filed on behalf of defendants Caldwell and Moore which deny that Plaintiff is entitled to any relief.

A Cross-Complaint has also been filed on behalf of Defendant Moore against Johns and Caldwell. Said Cross-Complaint alleges that in the event the Court prohibits the transfer of stock from Moore to Caldwell, Moore's stock would be worthless; therefore, the Cross-Complaint prays that the

Court order Caldwell and Johns to purchase said stock for the sum of $55,000.00. The Cross-Defendants have denied that Cross-Plaintiff is entitled to any relief.

Although not requested by any of the parties, the Court hereby makes the following findings of fact and conclusions of law pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure.

## FINDINGS OF FACT

Kirby Moore owned and operated an implement dealership for a number of years in Newbern. Harold Caldwell was an employee of this business. On January 22, 1965, Carlos Johns and Harold Caldwell entered into a contract with Kirby Moore regarding the purchase of this dealership. This contract was entered into by Johns and Caldwell as individuals. A lease was also executed simultaneously with the contract, and it also was executed by Johns and Caldwell as individuals. No corporation was in existence at this time since the charter was not issued until February 1965.

It was agreed by all parties that Defendant Richard Moore, the son of Kirby Moore, would be a part owner in the dealership. All parties agreed to and in fact did form a small business corporation whose charter was issued February 1965. The stock ownership of the newly formed corporation was as follows: Kirby Moore—10%, Richard Moore—10%, Carlos Johns—40% and Harold Caldwell—40%. The ten percent (10%) of the stock owned by Kirby Moore was security for part of the purchase price of the dealership and was later transferred by Kirby Moore equally to Caldwell and Johns upon their paying the indebtedness to Kirby Moore.

The By-Laws of the corporation specifically restricted the transfer of stock of the two (2) major shareholders, Caldwell and Johns. Said By-Laws did not expressly or impliedly restrict the transfer of stock owned by Moore. Furthermore, Caldwell and Johns entered into a Buy and Sell Agreement on July 23, 1977, relating to their 495 shares each of the stock of Newbern Implement Company, Inc. Although

this document states that Richard T. Moore owns 110 shares of stock, Richard T. Moore was not a party to this agreement. Therefore, the Court finds that neither the By-Laws nor any written agreements between the parties restricted the transfer of stock owned by Richard T. Moore. The Court further finds that there was no oral agreement relating to restrictions on the sale of stock owned by Richard T. Moore.

For several years after incorporation the corporation retained its Subchapter S status and distributed dividends during the profitable years of 1966, 1968 and 1969. Johns and Caldwell then desired to terminate the Subchapter S status of the corporation; therefore, Johns sold five (5) shares of stock to his daughter for the express purpose of terminating the Subchapter S status. This stock was later re-transferred to Johns.

Moore was removed as a Director after 1969 and was replaced by Linda Davis, an employee of the business. Except for the year 1974, no dividends have been paid to stockholders since the termination of the Subchapter S status of the corporation. In 1976 bonuses in addition to regular salary were paid to Johns and Caldwell in the amount of $25,000.00 each. In 1977 bonuses in addition to salary were paid to Johns and Caldwell in the amount of $30,000.00 each. No payments were made to Moore.

In 1966 the corporation bought a certain tract of land for potential development as a commercial site. In 1976 at the direction of the Board of Directors the corporation sold this tract to Johns and Caldwell under the partnership name of J & C for the same price that the corporation paid in 1966. The partnership is presently leasing this tract and a building thereon to the corporation for $1,540.00 per month.

In May of 1978 Moore contacted Caldwell regarding the possibility of selling his stock to Caldwell. No definite price was established during this conservation. On May 19, 1978, Caldwell delivered to Moore a check in the amount of $36,000.00 and Moore signed over the stock certificates to Caldwell. Caldwell did not inform Johns about the

offer of Moore until after the transaction had been completed. Johns as Secretary of the corporation then refused to make this transfer on the books of the corporation. It was at this point that suit was instituted by Johns.

The Court also finds that from the inception of the corporation until the attempted transfer of the stock from Moore to Caldwell, Caldwell and Johns had a satisfactory working relationship and had been able to handle without serious dispute the setting of salaries and bonuses for themselves as well as all other matters relating to the implement business.

Plaintiff Johns has based much of his argument upon the fact that this business has operated as a partnership for all practical purposes rather than a corporation. However, the Court finds that said business was properly organized as a corporation and has continued to operate as a corporation both in the legal and practical sense. Directors' meetings have been held, minutes have been kept, corporate tax returns have been filed and dividends have been declared. All of these activities are indicative of a corporate form of business.

## CONCLUSIONS OF LAW

### A. *Fiduciary relationship*

Plaintiff has argued that a fiduciary relationship exists among all three (3) shareholders. Giving further support to his argument, Plaintiff has insisted that the business has operated as a partnership in the practical sense rather than a corporation. Furthermore, Plaintiff relies strongly upon the argument that this is a close corporation.

There is no question but that this business has and continues to be a close corporation since (1) there are few shareholders, (2) the shares are not traded on the securities market, (3) the shareholders live in the same geographical area, and (4) most of the shareholders serve as directors, officers and employees of the business. (See *O'Neal's Close Corporations*, 2nd Edition, Vol. 1, Sec. 1.02 and 1.07.) However, the Court is of the opinion that just because a corporation is a close corporation as opposed to a regular corporation does not necessarily mandate a finding of a fiduciary relationship among all shareholders relating to the sale and purchase of stock.

It is clear that corporate officers occupy a fiduciary relation to the corporation. *Central Bus Lines v. Hamilton National Bank*, 239 S.W.2d 583 (Tenn.App.1951). It is further clear that corporate directors occupy a fiduciary relationship to the corporation. 19 C.J.S. *Corporations*, Sec. 761, Page 103 (1971). Therefore, close investigation is accorded a corporation's transactions with an officer or director, and the burden of proof is placed upon the officer or director because of his fiduciary capacity. *Intertherm, Inc. v. Olympic Homes Systems*, 569 S.W.2d 467 (Tenn.App.1978).

The question presented in the case at bar, however, is not whether a fiduciary relationship existed as to the corporation but rather is whether a fiduciary relationship existed among the shareholders.

It is very clear in Tennessee that not only do officers and directors owe a fiduciary relationship to the corporation and its shareholders, but it is also clear that a controlling stockholder owes a fiduciary duty to other shareholders. *Dale v. Thomas H. Temple Company*, 208 S.W.2d 344 (Tenn. 1948). Our courts are prompt to redress the injuries to minority stockholders caused by the wrongdoings of majority stockholders. *McCampbell v. Fountain Head Railroad Company*, 111 Tenn. 55, 77 S.W. 1070 (1903). However, unless it is shown that a shareholder owns a majority of the stock or that he otherwise controls or dominates the corporation, a shareholder cannot be said to be a fiduciary. *Intertherm, Inc. v. Olympic Homes Systems, supra.*

It is apparent from the above cases that directors and officers owe a fiduciary relationship to the corporation and its shareholders. It is further apparent that majority stockholders owe a fiduciary relationship to minority stockholders. However, no authority has been submitted to the Court stating that a minority stockholder stands

in a fiduciary relationship to a majority stockholder. Furthermore, no authority has been submitted to the Court stating that all shareholders stand in a fiduciary relationship with one another as to the purchase and sale of stock. In fact, Tennessee has specifically held that there is no such fiduciary relationship.

> "While directors occupy a trust relation to the corporation which they direct, their duty does not apply to the stockholders in the sale and purchase of stock. Dealing in its own stock is not a corporate function. In buying or selling stock, directors may trade like an outsider, provided they do not affirmatively act or speak wrongfully, or intentionally conceal facts with reference to it." *Shaw v. Cole Manufacturing Company*, 132 Tenn. 210, 177 S.W. 479 (1915).

A purchase of stock by a director or other officer from a stockholder is valid unless there is actual fraud. 19 C.J.S. *Corporations*, Sec. 793(b) Page 172 (1971).

The *Shaw* case just cited above held that a director in buying or selling stock may trade like an outsider absent fraud or concealment. From an examination of the facts, it is clear that no fraud was involved in the sale and purchase of Moore's stock. The only fact concealed was that Johns was not informed about the sale and purchase until after the sale was accomplished. It is the opinion of the Court that this is not the type of concealment contemplated by the exception as set forth in the *Shaw* case. The concealment exception as set forth in the *Shaw* case relates to a purchaser who misleads or conceals certain material facts from the seller. In the case at bar the concealment was not between the purchaser and seller and was not material to the actual sale itself.

For the above reasons, the Court holds that Defendant Moore owed no fiduciary relationship to Plaintiff Johns as to the sale of his stock. Furthermore, the Court holds that Defendant Caldwell owed no fiduciary relationship to Defendant Johns as to the purchase of said stock.

### B. *Constructive Trust Theory*

*Shaw v. Cole Manufacturing Company, supra* created a further exception to the rule that directors may trade like an outsider in buying and selling stock. This exception was that a relation of trust existed between the parties. Apparently relying upon this exception, Plaintiff Johns has alleged that a trust relationship indeed existed among the shareholders.

A constructive trust is a judge-created trust or doctrine which enables the Court, without violating rules of logic, to reach an interest in property belonging to one person yet titled in and held by another. *Wells v. Wells*, 556 S.W.2d 769 (Tenn.App.1977). It arises, contrary to intention, against one who by fraud, duress, abuse of confidence, commission of wrong, or any form of unconscionable conduct, concealment, or questionable means, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. *Sanders v. Forcum-Lannom, Inc.*, 225 Tenn. 637, 475 S.W.2d 172 (1972).

Although Johns and Caldwell have been business associates for a number of years and are partners in a partnership which leases property to the corporation, these facts do not give rise to a constructive trust as to shares purchased by Caldwell. The sale and purchase of the stock in question was not accomplished by fraud, duress, abuse of confidence, or by any other questionable means. Moore initiated the transaction by offering his stock to Caldwell. Caldwell later decided to accept the offer and the transaction was completed. Such facts do not give rise to a constructive trust.

### C. *Assignability of shares*

Generally, a stockholder has perfect ownership over his stock and may sell, assign, pledge, or otherwise dispose of it as he pleases and the corporation is bound to honor his acts in regard thereto. *State ex rel Lowell Wiper Supply Company v. Helen Shop, Inc.*, 211 Tenn. 107, 362 S.W.2d 787 (1962). Stockholders may, however, by agreement impose reasonable restrictions upon the right to transfer their stock. 18

C.J.S. *Corporations*, Sec. 391(b), Page 922 (1969). Tennessee apparently recognizes that the sale of stock may be reasonably restricted and Tennessee Code Annotated Section 48–509(3) requires such restrictions to be conspicuously stated on the certificate.

In the case at bar the Court had heretofore found that there was no written or oral agreement restricting the transferability of the shares of stock owned by Moore. Furthermore, the corporate by-laws which attempted to limit the transferability of the stock owned by Johns and Caldwell did not state any restrictions as to the stock owned by Moore. Furthermore, the certificates held by Moore had no restrictions stated thereon. Therefore, the Court holds that the stock held by Moore could be disposed of as he pleased since there was no agreement to the contrary and since the by-laws imposed no restriction upon said stock.

D. *Conclusions as to Original Complaint*

Based upon the foregoing it is the conclusion of the Court that the complaint is not well taken and should be dismissed and that the restraining order previously issued should be dissolved.

E. *Cross-Complaint*

Defendant Caldwell filed a Cross-Complaint against Moore and Johns seeking judgment against them in the amount of $55,000.00 in the event the Court should set aside the purchase and sale in question. Since the Court is not setting aside the purchase and sale in question, the Cross-Complaint should be dismissed.

Plaintiff has filed seven assignments of error raising six issues for review relating to (1) the conduct of the trial below, (2) the findings of fact, and (3) the conclusions of law. The issues are as follows:

I.

The Court committed error by refusing to permit the attorneys for the appellant to call Richard T. Moore as an adverse witness for the purpose of cross-examining him in rebuttal to what Caldwell had testified.

II.

The Court erred in finding as a fact that:

(A) neither the by-laws nor any written agreement between the parties restricted the transfer of stock owned by Richard T. Moore and that there was no oral agreement relating to restrictions on the sale of stock owned by him, and

(B) this "close corporation" was not operated as a partnership for all practical purposes, rather than a corporation.

III.

The Court erred in concluding as a matter of law that:

(A) neither Caldwell nor Moore violated any fiduciary relationship whatsoever with Johns as to the purchase and sale of Moore's stock, and

(B) no fiduciary relationship or trust relationship existed between the three parties to this lawsuit, particularly between Johns and Caldwell, and that the purchase and sale of Moore's stock was not accomplished by any abuse of confidence or by any other questionable means, and

(C) the failure of the by-laws or Moore's stock certificate to contain any restriction as to transfer made it legally proper for him to dispose of it as he pleased particularly to Caldwell.

This non-jury case comes to us pursuant to T.C.A. 27–303 for a trial *de novo* accompanied by a presumption of the correctness of the judgment below and that judgment will be affirmed unless there is an error of law or unless the evidence is found by this Court to preponderate against the judgment below. *Smith v. Jarnigan*, 58 Tenn.App. 668, 436 S.W.2d 310 (1968).

The only two witnesses who testified at the trial were Johns and Caldwell. Moore was present in court, but he did not testify. Upon the conclusion of the testimony of Caldwell his attorney announced that he had concluded his proof. Thereupon the attorney for Moore moved the Court to dismiss the complaint, and his motion was denied. Moore's attorney then announced

that he rested; and Johns' attorney moved the Court to call Moore as an adverse witness for the purpose of cross-examination in rebuttal to the testimony of Caldwell. The motion was resisted by Moore's attorney, and the Court ruled that although Johns' attorney was entitled to introduce rebuttal proof, he was not entitled to present rebuttal proof on the motion to dismiss which had been overruled. Johns now insists that the Court committed error in refusing to permit him to call Moore as an adverse witness.

The Trial Court has wide discretion in matters of this nature and the ruling of the Trial Court with respect to additional proof will not be disturbed on appeal unless there has been an abuse of discretion. See *Evans v. Evans*, 558 S.W.2d 851 (Tenn.App. 1977). We find no such abuse of discretion here. In any event, it does not affirmatively appear that the allowing or disallowing of this testimony in rebuttal would have affected the results of the trial. T.C.A. 27–117 and Rule 36, Tennessee Rules of Appellate Procedure.

From a careful examination of the entire record we find that the evidence does not preponderate against the findings of fact of the Trial Court. It is undisputed that the by-laws did not restrict the transfer of Moore's stock; and there was no proof of a written agreement which related to the transfer of stock issued to Moore. Further, neither of the two witnesses testified as to any conversation or oral agreement which related to the transfer or disposition of the stock owned by Moore. All the proof in the case, including numerous exhibits, clearly reflects that this corporation was operated as such, particularly from and after 1969 when the Subchapter S status was terminated and Moore was removed as a director. We find in the record no material evidence which conflicts with the findings of fact of the Trial Court.

In addition we find no fault with the law relied upon by the Trial Judge or his conclusions drawn therefrom. However, in response to the able and persuasive arguments, written and oral, of the attorneys for Johns, we add the following comments.

With respect to percentage of ownership of the corporation Johns' position has not been altered. At no time has he owned more than 45% of the stock, and at all times he has been vulnerable to any lawful action taken by owners of more than 50% of the outstanding shares. From 1965 until 1978 there continuously existed the possibility that Caldwell with 45% of the stock and Moore with 10% of the stock would join forces and take steps which would have been offensive to Johns. In this sense Johns has always been a minority stockholder along with both Caldwell and Moore. Any two of the three stockholders could have controlled the corporation without consideration or regard for the position of the third stockholder. In fact, this is precisely what Johns and Caldwell did with respect to Moore. Without consultation with Moore they (1) terminated the Subchapter S status of the corporation; (2) in 1976 and 1977 they declared no dividend but paid to themselves equal year-end bonuses with no bonus payment being made to Moore; and (3) in 1976 without the knowledge and consent of Moore they had the corporation convey to them jointly a tract of land for the same purchase price paid by the corporation when it acquired the land in 1966. It would appear that each of the foregoing acts was adverse to the financial interests of Moore as a stockholder in the corporation. Under the circumstances we find no fiduciary obligation owed by Moore to either Johns or Caldwell; and we can appreciate Moore's desire to sell his stock.

The alleged fiduciary relationship between Caldwell and Johns as a matter of equity presents a closer question. Johns insists that there existed between them a trust relationship and that the purchase of Moore's stock by Caldwell amounted to an abuse of confidence and unconscionable conduct. However, there is no showing that such purchase was in violation of any agreement, written or oral, of the parties, or that the interests of the corporation were adversely affected thereby, or that the rela-

tive position of Johns in ownership of the corporation was altered as a result thereof. Although the term "oppressive conduct" is used frequently by the attorneys for Johns in relation to this stock sale, there is no evidence of conduct by Caldwell which is in any way oppressive to Johns. As to anticipated future conduct, Johns, after the transfer, stands in the same relationship to Caldwell alone as previously he stood as to Caldwell and Moore jointly.

■ There is no question but that Caldwell through the purchase of Moore's stock has secured a real advantage over Johns by becoming the owner of the majority of the outstanding shares of stock thereby acquiring, for all practical purposes, control of the corporation. Johns, therefore, urges the Court to declare as a matter of equity a "constructive trust" whereby Caldwell would be deemed to hold one-half of Moore's stock in trust for Johns to be transferred to Johns upon payment by him to Caldwell of one-half of the purchase price thereby preserving the balance between Caldwell and Johns in percentage ownership and control of the corporation. See *Gibson's Suits in Chancery*, Section 977 (5th Edition 1956). Justice Creson speaking for the Supreme Court in the case of *Sanders v. Forcum-Lannom, Inc.*, 225 Tenn. 637, 475 S.W.2d 172, 174 (1972) held with respect to constructive trusts as follows:

It is the well established rule in this State that a constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. (cases cited)

In the case at bar the Trial Court expressly found that "the sale and purchase of the stock in question was not accomplished by fraud, duress, abuse of confidence or by any other questionable means". The evidence does not preponderate against this finding, and we find no reported case which could be construed as being authority for the imposition of a constructive trust under the facts of this case. Further, the refusal of the Trial Court to disturb this stock sale is in accord with the principles laid down by the Supreme Court in the case of *Shaw v. Cole Mfg. Co.*, 132 Tenn. 210, 177 S.W. 479, 481 (1915) as follows:

Much as courts of justice prefer that trades should be conducted on equal terms, with fair results, they cannot take from persons of full age their right to contract, nor upset their transactions without full proof of actual misrepresentation or concealment. So to do would unreasonably retard commercial dealings, and impair rather than improve the business welfare. Equally as strong is the duty to relieve seasonably against fraud when convincingly established.

We find that the Trial Court correctly held that there was no violation of a fiduciary relationship with Johns; that outside of the provisions of the by-laws and the written agreement between Johns and Caldwell no fiduciary or trust relationship existed between the three parties or any of them as to the sale and purchase of stock; that the purchase of Moore's stock was not accomplished by abuse of confidence or other questionable means; and that it was legally proper for Moore to dispose of his stock as he pleased. Accordingly, the Trial Court is affirmed as to all issues raised by Johns on appeal.

Moore also appealed from the action of the Trial Court in dismissing his cross-complaint stating that he joined in the appeal for the purpose of preserving his rights against both Johns and Caldwell in the event the Court should set aside the sale of his stock to Caldwell. This eventuality has not occurred, and we affirm the Trial Judge as to the issues raised by Moore on appeal.

It results that the judgment of the Trial Court dismissing the complaint, dissolving the restraining order and dismissing the cross-complaint is affirmed and the costs of

appeal will be assessed against the plaintiff-appellant.

MATHERNE and SUMMERS, JJ., concur.

### JUDGMENT

This matter came on to be regularly considered by the Court on the record. For the reasons stated in the Court's Opinion, of even date, it is Ordered that:

(1) The judgment of the Trial Court dismissing the complaint, dissolving the restraining order and dismissing the cross-complaint is affirmed.

(2) Costs of appeal are assessed against the plaintiff-appellant and the sureties on his appeal bond, for the collection of which execution may issue, if necessary.