_____IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

_____

CARL NELSON,                          )
                                      )
        Plaintiff/Appelluit,          ) Shelby Circuit No. 33066 T.D.
                                      )
VS.                                   ) Appeal No. 02A01-9403-CV-00043
                                      )
HAROLD EUGENE MARTIN and              )
JACK W. GAMMON,                       )
                                      )
        Defendants/Appellees.         )

FILED

February 1, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE JAMES M. THARPE, JUDGE

GAVIN M. GENTRY
ARMSTRONG, ALLEN, PREWITT,
GENTRY, JOHNSTON & HOLMES
Memphis, Tennessee
Attorney for Plaintiff/Appellant

J. CECIL MCWHIRTER
PAUL M. O'BRIEN
MCWHIRTER & WYATT
Memphis, Tennessee
Attorney for Appellee Martin

LEO BEARMAN, JR.
HEISKELL, DONELSON, BEARMAN,
ADAMS, WILLIAMS & CALDWELL
Memphis, Tennessee
Attorney for Appellee Gammon

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

ALAN E. HIGHERS, JUDGE

CONCUR:

W. FRANK CRAWFORD, JUDGE

PAUL G. SUMMERS, SPECIAL JUDGE

This case arises from the termination of appellant, Carl Nelson, as employee, officer

and director of B & M Printing Company. The pertinent facts are as follows: In 1968, Nelson, together with appellees, Harold E. Martin and Jack W. Gammon, formed a partnership named B & M Printing Company for the purpose of engaging in the commercial printing business. In 1969, the three partners converted the partnership into a corporation and were issued 100 shares each of the corporation's stock. There were no other shareholders in the corporation. Nelson, Gammon and Martin were all employed by the corporation and acted as the corporation's only officers and directors. The presidency of the corporation was initially rotated between the three parties every year, but at the time of Nelson's termination, Martin was the president and had been for several years. The parties received no compensation for their duties as officers and directors, but did receive salaries, commissions based on individual sales, and bonuses as employees of the corporation. In addition, the parties received rent money from the corporation through their partnership, BCJ Enterprises, which owned the property on which B & M Printing Company was located.

In March 1989, Nelson and Martin were involved in a dispute over one of the corporation's printing accounts that Nelson serviced. According to Martin, during the argument, Nelson cursed at him and said, "You G.D.M.F., you don't tell me what to do. I'll do what I want to do." Martin testified in his deposition that he then told Nelson that he couldn't continue to work for the corporation with that attitude and Nelson stormed out. Martin further testified that a second confrontation occurred a few days later during which Nelson once again cursed at Martin and stated, "You G.D.M.F., I'll do what I want to do. You don't tell me what to do and I'll walk all over you. You don't have no right. You cannot fire me from this company and I'll walk all over you before you do it." At that point, Martin testified, that he informed Nelson, " I am going to terminate you from this company with that attitude." Nelson testified that he did not recall what was said during the meeting, but admitted that he had no way of refuting Martin's testimony regarding the incident. Nelson did testify however, that he never used the word M.F. and also disputed Martin's testimony that a second meeting occurred between the parties.

Following the confrontation, Martin gave Nelson a letter informing him that he was terminated as an employee of the corporation. Thereafter, a board of directors meeting was called at which Nelson was represented by his attorney who had full proxy to vote on

2

his behalf. At this meeting, Martin and Gammon, representing a two-thirds majority, voted to remove Nelson as an officer of the corporation. Likewise, acting as a majority of the shareholders, they voted to remove Nelson as a director of the corporation. B & M Printing Company's corporate bylaws allowed for both the termination of Nelson by the president of the corporation and his removal as an officer and director. Nelson remained an equal shareholder in the corporation. Nelson, Gammon and Martin sold their stock in 1992 for over $6,000,000.

Nelson testified that when he first learned of his termination by a letter handed to him by Martin he was completely taken aback. According to Nelson, over the course of the parties' 20-year business relationship, the three men had experienced differences of opinion and had often cursed at each other. In Nelson's opinion, cursing a co-founder was not a legitimate justification for his termination. In addition, Nelson alleged that the corporation lost good will and sales from customers which the plaintiff had been contacting as a salesman for the company, thereby indicating that his termination was not a prudent business decision.

Nelson filed suit against Martin and Gammon on March 13, 1990, seeking reimbursement for monetary losses sustained by Nelson as a result of his termination as an employee, officer and director of B & M Printing Company. Nelson alleged four counts of wrongdoing by Martin and Gammon. First, Nelson alleged that Martin and Gammon conspired together, with malice and for personal gain, to interfere with Nelson's contractual relationship with the corporation by inducing the corporation to terminate his employment. Second, Nelson alleged that the defendants conspired together to interfere with a prospective advantage to Nelson. Third, Nelson alleged that the defendants violated T.C.A. § 47-50-109 which makes it unlawful for any person to induce or procure the breach of any lawful contract. Finally, Nelson alleged that the three founders of B & M Printing were in a fiduciary relationship to each other and the defendants breached this fiduciary duty when they terminated Nelson with malice and for personal gain.

Both Martin and Gammon filed motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12.02 (6) of the Tennessee Rules of Civil Procedure. In a memorandum opinion, the trial judge granted defendants' motions as to

3

Count II dealing with interference with a prospective advantage and denied the motions as to the remaining counts.    After engaging in discovery, the defendants filed motions for summary judgment arguing that no genuine issue of material fact existed in the case. After oral argument, the trial judge, without an opinion, granted defendants' motions for summary judgment as to Counts I, III and IV of  Nelson's complaint.   Nelson has appealed.


COUNTS I & III

We will discuss counts I and III together as they both involve breach of  contract claims.  It is undisputed that Nelson did not have a written contract of employment with B & M Printing Company.   Nelson, however, avers that he had an oral lifetime employment contract with the corporation pursuant to a "general agreement" between Martin, Gammon and himself.


The law in Tennessee is clear, that "an oral contract for life time employment or permanent employment amounts to an indefinite hiring terminable at the will of either party...." Price v. Mercury Supply Co., Inc., 682 S.W.2d 924, 934 (Tenn. App. 1984).  It is equally clear, that an at-will employee can be discharged for good cause, bad cause, or no cause at all. Chism v. Mid-South Milling Co., Inc., 762 S.W.2d 552, 555 (Tenn. 1988). Thus, a terminated employee with an oral lifetime employment contract does not have an actionable claim against his employer for breach of contract because there is no contractual right to continued employment. Likewise, there can be no recovery for procurement of breach of contract under common law or T.C.A. § 47-50-109.  Forrester v. Stockstill, 869 S.W.2d 328, 330 (Tenn. 1994).


The Tennessee Supreme Court has, however,  recognized the tort of intentional interference with at-will employment. Forrester v. Stockstill, 869 S.W.2d at 330.   Under this theory, "intentional interference with at-will employment by a third party, without privilege or justification, is actionable." Id.   While this tort has been applied to actions of corporate directors and officers who intentionally interfere with the at-will employment of corporate employees, we conclude, as a matter of law, that Nelson cannot state a cause of action against either defendant for intentional interference with at-will employment.


In Forrester, the  Supreme Court stated that an employee may only maintain a suit

4

for intentional interference with at-will employment against officers or directors of a corporation if "the proof establishes that they [the officers or directors] stood as third parties to the employment relationship at the time they performed the acts found to have caused [the employee's] discharge." Forrester v. Stockstill, 869 S.W.2d at 331.   Neither Martin nor Gammon can  be considered  a third party to the transaction.  At the time of Nelson's termination, B & M Printing Company was a close corporation.  Nelson, Martin and Gammon were the sole shareholders, sole directors and sole officers.  As such, Nelson, Martin and Gammon *were* B & M Printing Company.

A party to a business relationship cannot tortiously interfere with himself.  Baker v. Welch, 735 S.W.2d 548, 549 (Tex. App. 1987).  Thus, where the officer or director  is so closely aligned with his corporation that they are treated as one entity, the individual  is considered  the corporation's alter ego. Id.   As such, it cannot be said that an individual tortiously interfered with himself by inducing himself to terminate an at-will employee.  Id.  In the present case,  Martin and Gammon are alter egos of B & M Printing Company.  They therefore cannot be held liable, as third parties, for intentional interference with Nelson's at-will employment.

## COUNT II

The Tennessee Supreme Court has declined to recognize the tort of intentional interference with prospective economic advantage.  Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc., 876 S.W.2d 818 (Tenn. 1994).   Therefore, we affirm the trial court's dismissal of this count for failure to state a claim.

## COUNT IV

Generally,  majority  shareholders  owe  a  fiduciary  relationship  to  minority shareholders. Johns v. Caldwell, 601 S.W.2d 37 (Tenn. App. 1980). In cases dealing with close corporations, where the majority shareholders can use their voting power to the disadvantage of minority shareholders, many courts have borrowed a rule from partnership law and have held that  majority shareholders in a close corporation have a heightened fiduciary obligation to minority shareholders. Wilkes v. Springside Nursing Home, Inc., 353 N.E.2d 657 (Mass. 1976);  Hallahan v. Haltom Corp., 385 N.E.2d 1033 (Mass. App. 1979); Application of Taines, 444 N.Y.S.2d 540 (N.Y. Sup. Ct. 1981); Crosby v. Beam, 548 N.E.2d

5

217 (Ohio 1989); W & W Equipment Co., Inc. v. Mink, 568 N.E.2d 564 (Ind. App. 1991); Gigax v. Repka, 615 N.E.2d 644 (Ohio App. 1992). Under this heightened standard, the majority shareholders are held to act in strict good faith and "may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation." Wilkes v. Springside Nursing Home, Inc., 353 N.E.2d at 662. Thus, majority shareholders are required to deal fairly, honestly and openly with minority shareholders and may not use their corporate control to prevent the minority from having an equal opportunity in the corporation. W & W Equipment Co., Inc. v. Mink, 568 N.E.2d at 570; Crosby v. Beam, 548 N.E.2d at 221. When the majority acts to deny employment to the minority, who usually depend on salary, bonuses and retirement benefits to recognize a return on the corporate investment, the controlling group must prove that it had a legitimate business purpose for its action. Wilkes v. Springside Nursing Home, Inc., 353 N.E.2d at 663; Gigax v. Repka, 615 N.E.2d at 648.

Based on the above principles, it is clear that Martin and Gammon, as controlling shareholders of a close corporation, had a fiduciary duty to deal honestly and fairly with Nelson. It is unclear from the record, however, if and to what extent Gammon was involved in Nelson's termination. It is undisputed that Gammon was not present at any time during the confrontations between Nelson and Martin and, according to Martin, Gammon was not involved in the decision to terminate Nelson. However, both Gammon and Martin ratified the decision to discharge Nelson at the March 25, 1989, board meeting.

In accordance with the foregoing principles, we hold that Martin must demonstrate a legitimate business reason for using their two-thirds voting power to terminate Nelson as an officer, director and an employee of B & M Printing Company. Martin testified in his deposition that he fired Nelson because Nelson cursed him and had a bad attitude. Nelson testified that the three shareholders had cursed at each other before and that this was not a legitimate reason for his termination. Whether or not it is legitimate to fire a co-owner because he cursed at another owner is an issue for the trier of fact who must consider the credibility of the witnesses and the prior course of dealings between the parties. Therefore, summary judgment as to this issue was inappropriate.

With respect to Gammon, the trial court must first determine whether Gammon

6

played a part in Nelson's termination. If so, then Gammon must also demonstrate a legitimate business reason for such termination. Conversely, if it is determined that Gammon was not sufficiently involved in the termination, then summary judgment was properly granted as to him.

For the reasons stated above, we affirm the trial court's ruling as to Counts I, II, and III of the plaintiff's complaint and reverse and remand for trial as to Count IV. Costs on appeal are taxed equally to the parties.

_____
                                                HIGHERS, J.

CONCUR:

_____
CRAWFORD, J.

_____
SUMMERS, SP. J.

7