## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

FILED

May 19, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| LEE P. FITE, Individually and | ) | |
| Derivatively on behalf of | ) | |
| H & M CONSTRUCTION CO., | ) | |
| INC., a Tennessee Corporation, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Madison Chancery No. 52002 |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 02A01-9710-CH-00266 |
| RICHARD L. FITE, C. DAVID FITE, | ) | |
| LARRY P. BECKER, H & M | ) | |
| CONSTRUCTION CO., INC., a | ) | |
| Tennessee Corporation and SHARES | ) | |
| OF STOCK IN H & M | ) | |
| CONSTRUCTION CO., INC. OWNED | ) | |
| BY LEE P. FITE, | ) | |
| Defendants/Appellees. | ) | |

APPEAL FROM THE CHANCERY COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE

THE HONORABLE JOE C. MORRIS, CHANCELLOR

For the Plaintiff/Appellant:

Martin H. Aussenberg
Memphis, Tennessee

For the Defendants/Appellees:

Lee J. Chase, III
Memphis, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID G. HAYES, J.

**OPINION**

This case involves allegations of breach of fiduciary duty, fraud in the inducement of a contract, and violation of the Tennessee Securities Act. The plaintiff asserts that the defendants, his two brothers who are majority shareholders in the family corporation, the corporation, as an alter ego or veil of the majority shareholders, and an officer and director of the corporation, used fraudulent expense and contract-kickback schemes to lower the book value of the corporation's stock when plaintiff executed an option to sell agreement. The trial court granted summary judgment to the defendants. We reverse and remand.

H & M Construction Co., Inc. ("H & M") is a closely held corporation which was owned jointly by the three Fite brothers. They each obtained a one-third ownership in the corporation after their father died in 1983. Plaintiff, Lee P. Fite ("Lee Fite"), worked for H & M from 1975 to 1978, 1986 to 1991, and again for a short time in 1995. C. David Fite and Richard L. Fite, ("the Defendant Fite Brothers"), have worked for H & M since 1970 and 1975, respectively. C. David Fite currently serves as the Chairman of the Board of H & M, while Richard L. Fite currently serves as the Chief Executive Officer of H & M. Larry P. Becker ("Becker") currently serves as the President of H & M and has been an officer and director of H & M at all times pertinent to this litigation. Although he was not a shareholder in 1992 when the option agreement was signed, he became a shareholder sometime prior to the filing of this suit. The record is unclear as to Becker's ownership percentage.

In 1991, Lee Fite decided to pursue a law degree. The parties negotiated a sale of Lee Fite's shares of H & M to allow him to finance his education. The record contains conflicting accounts of who initiated the negotiations. Lee Fite hired an attorney, Daniel Hatzenbuehler, in connection with the negotiations. On March 31, 1992, Lee Fite signed an Option Agreement which granted H & M a fourteen year option to buy out his ownership interest in H & M. Pursuant to the Option Agreement, Lee Fite resigned as a corporate director and officer of H & M and discontinued his employment with the corporation. The book value used in the Option Agreement was $29,980.45 per share. This figure was determined by outside certified public accountants based on the audited financial statements of H & M. The Option Agreement provided that the book value would be increased by nine percent per year for each calendar year after the agreement was executed. H & M purchased 4.11 shares from Lee Fite in 1991 for a total of $113,156; 4.31 shares in 1992 for a total of $129,215; 5.96 shares in 1993 for a total of $194,794; 6.06 shares in 1994 for a total of $215,855; and 5.83 shares in 1995 for a total of $226,538. H & M advanced $143,379 to Lee Fite in 1996,

although no shares were redeemed because of pending litigation. Lee Fite also received $150,000 pursuant to a confidentiality agreement signed at the time of the Option Agreement.

In July 1995, Lee Fite resumed work for H & M. At that time, Lee Fite noticed that his brothers were living an extravagant lifestyle, allegedly characterizing the funds needed to support this lifestyle as corporate expenses. Lee Fite believed that the inflated corporate expenses and large corporate salaries paid to the Defendant Fite Brothers had had the effect of lowering the book value of his stock, thereby decreasing the value of Lee Fite's interest in H & M at the time of the sale.

On June 24, 1996, Lee Fite filed a complaint against Richard L. Fite, C. David Fite, Larry P. Becker, H & M Construction Co., Inc., and Shares of Stock in H & M Construction Co., Inc. Owned by Lee P. Fite. The defendants will collectively be referred to as "the Defendants." The complaint asserted both direct and derivative causes of action for breach of fiduciary duties, fraudulent inducement to contract, and violation of the Tennessee Securities Act.[1] All of Lee Fite's claims were based on the same facts--that the Defendants used various schemes to reduce the net income of the corporation, including excessive salaries to the officers and directors, the use of corporate funds to pay for personal items or services that benefit the officers and directors, and

---

[1] The text of the Tennessee Securities Act, found in § 48-2-121, reads:

(a) It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly, to:
(1) Employ any device, scheme, or artifice to defraud;
(2) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
(3) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.
(b) It is unlawful for any person who receives any consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise, in this state, to:
(1) Employ any device, scheme, or artifice to defraud the other person;
(2) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon the other person; or
(3) Take or have custody of any securities or funds of any client except as the commissioner may by rule permit or unless the person is licensed as a broker-dealer under this part.
(c) It is unlawful for any person to make or cause to be made, in any document filed with the commissioner or in any proceeding under this part, any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

Tenn. Code Ann. § 48-2-121 (Supp. 1998).

2

contract "kickbacks," that is, corporate payment of excessive prices for goods and services provided by entities controlled by the corporation's officers and directors. Use of these schemes allegedly fraudulently lowered the book value of the stock that Lee Fite agreed to sell in the Option Agreement. The mismanagement of corporate funds by the Defendants violated their fiduciary duty to H & M, Lee Fite asserted, because it reduced H & M's net income and shrunk its retained earnings.

Prior to any substantial discovery, the Defendants filed a motion for summary judgment, as well as a motion to stay discovery pending resolution of the motion for summary judgment. In their motion for summary judgment, the Defendants asserted that Lee Fite's claims were barred by the statute of limitations, laches, and unclean hands. They asserted that Lee Fite lacked standing to bring a derivative claim since he did not represent any other shareholder. In addition, they argued that Lee Fite was estopped from bringing his claims because he affirmed the Option Agreement in a prior legal proceeding and because the Option Agreement contained a release of all claims against them. Finally, they asserted that Lee Fite's failure to return the consideration he received under the Option Agreement barred his claims. In support of their motion for summary judgment, the Defendants filed a memorandum of law, the closing documents signed in connection with the sale of stock, including the Option Agreement, mutual release, and copies of checks showing monies paid to Lee Fite under the Option Agreement, Lee Fite's deposition taken during his 1994 divorce proceedings containing statements allegedly warranting the application of judicial estoppel, and affidavits by C. David Fite, Richard L. Fite, and Larry P. Becker containing the circumstances and specifics of the stock sale. The Defendants sought a stay of discovery pending resolution of the summary judgment motion, alleging that Lee Fite sought "irrelevant, immaterial, sensitive and confidential information which has no bearing upon this lawsuit and will in no way lead to the discovery of admissible evidence." In addition, they argued that discovery was moot because Lee Fite's claims were barred by the statute of limitations, judicial estoppel, voluntary release, laches, and waiver.

In response, Lee Fite filed a memorandum of law in which he argued that summary judgment was inappropriate because he had not been afforded an adequate opportunity to conduct discovery and because the case involved fraud issues that could not be resolved by summary judgment. In addition, he argued that the determination of whether his claim was barred by the statute of

3

limitations could not be made on a motion for summary judgment. Lee Fite denied release or waiver of his claims. In support of his response to the summary judgment motion, Lee Fite filed his own affidavit describing the circumstances surrounding the stock sale and an affidavit by his ex-wife, Janet Denice Jones Fite, stating that Lee Fite told her in 1992 that he believed his brothers cheated him in the stock sale. Lee Fite argued that discovery should be permitted because he was deprived of the opportunity to adequately respond to the Defendants' motion for summary judgment. He argued that discovery is a condition precedent to the entry of summary judgment, and therefore, summary judgment was inappropriate.

After considering the parties' pleadings and supporting documents, the trial judge concluded that there was no genuine issue as to any material fact, and that the Defendants were entitled to judgment as a matter of law on all legal theories. No discovery was permitted. Rule 11 sanctions were denied. The order of the trial judge did not set forth his reasoning.

On appeal, Lee Fite argues that the trial court erred in dismissing his claims. Lee Fite contends that his allegations state a claim for relief and raise genuine issues of material fact as to the Defendants' breach of fiduciary duties, fraudulent inducement to contract, and violation of the Tennessee Securities Act. Lee Fite maintains that the Defendants failed to establish any affirmative defenses to his allegations.

In support of his direct action for breach of fiduciary duty, Lee Fite argues that the Defendant Fite Brothers realized disguised dividends not shared with the other shareholders by having entities controlled by the Defendant Fite Brothers and Becker charge H & M inflated prices. In addition, he argues that the Defendant Fite Brothers, as majority shareholders and officers and directors, Becker, as an officer and director, and H & M, as the alter ego of the majority shareholders, avoided paying dividends to him as the minority shareholder by keeping H & M's retained earnings artificially low.

In support of his derivative action for breach of fiduciary duty, Lee Fite argues that the Defendant Fite Brothers, as majority shareholders and officers and directors, Becker, as an officer and director, and the corporation as a mere veil of the majority shareholders, harmed the corporation by diminishing its retained earnings. He contends that they defrauded the corporation by having entities controlled by the individual Defendants charge H & M inflated prices. He argues that these actions constitute fraudulent inducement to contract and a violation of the Tennessee Securities Act

4

because they fraudulently reduced H & M's net income and, as a result, lowered the book value of the stock. As to all of the legal theories advanced, Lee Fite argues that the trial court erred in refusing to permit discovery prior to deciding the motion for summary judgment.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* at 210-11. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See id.* Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See id.*

Lee Fite alleges overall that the trial court erred in not permitting him to conduct discovery prior to deciding the motion for summary judgment. Indeed, in some circumstances, the parties must be afforded the opportunity to conduct discovery prior to the determination of a summary judgment motion. *See Griffin v. Traughber*, No. 01-A-01-9511-CH-00533, 1996 WL 355069, at *6 (Tenn. App. June 28, 1996). "This proposition is especially true when such discovery is necessary to properly oppose the motion." *Id.* (citing numerous federal and Tennessee cases). In connection with each legal theory on which Lee Fite relies, we will consider his argument on appeal that he should have been permitted to conduct discovery prior to resolution of the motion for summary judgment. We will also address the affirmative defenses asserted by the Defendants, including the statute of limitations, waiver, judicial estoppel and release.

Lee Fite argues that the trial court erred in dismissing his direct action for breach of fiduciary duty. Lee Fite maintains that Defendant Fite Brothers, as majority shareholders, Becker, as an officer and director, and H & M as the alter ego of the majority shareholders, breached their fiduciary duties to Lee Fite as a minority shareholder. Lee Fite asserts that they utilized contract-kickback schemes in which entities controlled by the individual Defendants charged the corporation

5

excessive prices. Lee Fite also contended that the Defendant Fite Brothers kept H & M's earnings low by paying themselves excessive salaries and using corporate funds to pay personal expenses. Through these schemes, Lee Fite alleged, the Defendants avoided paying dividends to Lee Fite as the minority shareholder.

It is a "well-settled rule[] of corporate law . . . that officers and directors of the corporation occupy a fiduciary relationship to their shareholders, as, indeed, do majority stockholders toward minority stockholders." *Nelms v. Weaver*, 681 S.W.2d 547, 549 (Tenn. 1984) (citing *Johns v. Caldwell*, 601 S.W.2d 37 (Tenn. App. 1980); *Heylandt Sales Co. v. Welding Gas Prods. Co.*, 180 Tenn. 437, 175 S.W.2d 557 (1943)). In general, majority shareholders may recover for injuries "caused by the wrongdoings of majority stockholders." *Nelson v. Martin*, 958 S.W.2d 643, 647-48 (Tenn. 1997) (quoting *McCampbell v. Fountain Head R.R Co.*, 111 Tenn. 55, 77 S.W. 1070 (1903)). The facts as alleged by Lee Fite could state a claim for breach of fiduciary duty, if properly supported by evidence. Lee Fite, as the respondent to the motion had the burden of showing "specific facts, not legal conclusions, by using affidavits or the discovery materials listed in Rule 56.03, establishing that there are indeed disputed, material facts creating a genuine issue." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). However, the motion for summary judgment was decided before Lee Fite was given the opportunity to conduct discovery. Therefore, unless the Defendants are entitled to summary judgment based on one of the asserted affirmative defenses, the grant of summary judgment was premature as to Lee Fite's direct action for breach of fiduciary duty.

Lee Fite next argues that the trial court erred in dismissing his derivative claim for breach of fiduciary duty. Rule 23 of the Tennessee Rules of Civil Procedure requires that a shareholder who brings a derivative action must "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Tenn. R. Civ. P. 23.06. The Defendants contend that the trial court correctly dismissed Lee Fite's claim because he has a conflict of interest as a matter of law under the holding of *Waterhouse v. Cumberland County Bank*, Nos. 03A01-9102-CH-00056, 03A01-9106-CH-00079, 1991 WL 199480 (Tenn. App. Oct. 8, 1991). *Waterhouse* held that where a plaintiff represents other similarly situated shareholders in a derivative suit on behalf of a corporation, and at the same time asserts his own interests in a direct action against the corporation, there is a conflict of interest as a matter of law. *Id.* at *2. *Hall v. Tennessee Dressed Beef Co.*, No. 01-A-01-9510-CH-00430, 1996 WL 355074,

6

at *5 (Tenn. App. June 28, 1996), expanded on *Waterhouse* and held that where a minority shareholder is the only minority shareholder, and thus is the only similarly situated shareholder, there is no conflict of interest when that shareholder also brings a direct action against the corporation. The *Hall* court reasoned that if a single minority shareholder were not allowed to bring a derivative suit, then "Rule 23.06 would deprive the shareholders of closely held corporations of their ability to bring derivative actions." *Id.*

In this case, it is unclear whether Lee Fite is the sole minority shareholder or whether there are other similarly situated shareholders. In their briefs, both parties maintain that the three Fite brothers owned equal one-third shares of H & M. The Option Agreement, however, was signed by a fourth shareholder, James M. Eidson, Sr. If Mr. Eidson is still a shareholder and is a similarly situated shareholder, then Lee Fite would be barred from his derivative suit under *Waterhouse*. If Lee Fite is the only minority shareholder, and thus the only similarly situated shareholder, then under *Hall* there would be no conflict of interest. Becker, an alleged co-conspirator, must be considered as well. Since the record in this case is unclear, we cannot determine whether Lee Fite's derivative claim was properly dismissed. Therefore, we remand for the trial court to determine whether Lee Fite was the only similarly situated minority shareholder and whether Lee Fite's derivative action can be maintained.

Lee Fite asserts that the trial court erred in granting summary judgment on his claim of fraudulent inducement to contract. As discussed above, Lee Fite argues that the Defendants used several schemes to reduce corporate income and lower the book value of Lee Fite's stock. Lee Fite argues that, by failing to pay him dividends, the Defendants encouraged him to liquidate his ownership. In his affidavit in opposition to the motion for summary judgment, Lee Fite alleged that his brothers told him that "the company was not making any money, and that there were no profits to distribute to shareholders."

The five elements of an action for fraudulent inducement to contract are: "(1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance." *Lowe v. Gulf Coast Dev., Inc.*, No. 01-A-01-9010-CH-00374, 1991 WL 220576, at *7 (Tenn. App. Nov. 1, 1991). As a general rule, summary judgment is not appropriate for a fraud

claim because a trial is needed to develop the action fully. ***See Fowler v. Happy Goodman Family***, 575 S.W.2d 496, 499 (Tenn. 1978); ***Long v. State Farm Fire & Cas. Co.***, 510 S.W.2d 517, 519 (Tenn. App. 1974). The facts as alleged by Lee Fite could properly state a claim for fraudulent inducement to contract. In response to the motion for summary judgment, Lee Fite needed to demonstrate that there was a genuine issue of material fact. ***See Byrd v. Hall***, 847 S.W.2d 208, 211 (Tenn. 1993). As with Lee Fite's direct action for breach of fiduciary duty, discussed above, Lee Fite was denied the opportunity to conduct discovery. Therefore, unless the Defendants are entitled to summary judgment based on one of the asserted affirmative defenses, the grant of summary judgment was premature as to Lee Fite's claim of fraudulent inducement to contract.

On appeal, the Defendants assert that the trial court properly dismissed Lee Fite's claims because each is barred by the applicable statute of limitations. We must determine whether a genuine issue of material fact exists as to this affirmative defense.

The Defendants assert that Lee Fite's claim for fraudulent inducement to contract is barred by the three year statute of limitations for tortious injury to property. ***See*** Tenn. Code Ann. § 28-3-105. They contend that Lee Fite's claims for breach of fiduciary duty are barred under the one-year statute of limitations contained in Tennessee Code Annotated § 48-18-601. They argue that Lee Fite's claim under the Tennessee Securities Act is barred by the Act's two-year statute of repose. ***See*** Tenn. Code Ann. § 48-2-122(h) (Supp. 1998).

Under the statutes for fraudulent inducement to contract and breach of fiduciary duty, the period of limitations accrues at the time the plaintiff knew of the acts from which the cause of action arose, or at the time that the plaintiff should have discovered them through reasonable diligence. ***See Vance v. Schulder***, 547 S.W.2d 927, 930 (Tenn. 1977); Tenn. Code Ann. § 48-18-601 (1995). The statute of repose for the Tennessee Securities Act, on the other hand, places a two-year cap on actions under the statute, which cannot be tolled merely by the plaintiff's failure to discover his cause of action. ***See Montcastle v. American Health Sys.***, 702 F. Supp. 1369, 1374 (E.D. Tenn. 1988). However, fraudulent concealment of the cause of action by the defendants will toll the statutes of limitations until the plaintiff discovers the fraud. ***See id.*** (discussing fraudulent concealment in regard to the Tennessee Securities Act's two-year statute of repose); ***Vance v. Schulder***, 547 S.W.2d 927, 930 (Tenn. 1977) (discussing fraudulent concealment in regard to the three year statute of limitations for tortious injury to property); Tenn. Code Ann. § 48-18-601

8

(containing provisions on fraudulent concealment in regard to the one-year statute of limitations for breach of fiduciary duty).

Lee Fite maintains that he did not know of the alleged fraud or breaches of fiduciary duty until July of 1995 when he returned to work for H & M. Conversely, the Defendants maintain that Lee Fite had full knowledge of their salaries, management policies, and other complained of acts starting in 1983. In *Soldano v. Owens-Corning Fiberglass Corp.*, 696 S.W.2d 887, 889 (Tenn. 1985), the court discussed the obligation to do a reasonable inquiry to attempt to discover fraud:

> Mere ignorance and failure of the plaintiff to discover the existence of a cause of action is not sufficient to toll the running of the statute of limitations. There is an exception to this rule. Fraudulent concealment of the cause of action by the defendant tolls the statute of limitations. It begins to run as of the time of the discovery of the fraud by the plaintiff. . . . [W]here a fiduciary relationship exists and there is a duty to speak, mere silence may constitute a fraudulent concealment.

*Id.* (quoting Tennessee Jurisprudence, Vol. 18, at 92). In general, the inquiry of when a plaintiff knew of or should have discovered a cause of action is a question of fact not properly decided on summary judgment. *See City State Bank v. Dean-Witter Reynolds, Inc.*, 948 S.W.2d 729, 735 (Tenn. App. 1996). In *Mike v. Po Group, Inc.*, 937 S.W.2d 790, 795 (Tenn. 1996), a suit by minority shareholders against the corporation and its majority shareholders for breach of fiduciary duty, the trial court granted summary judgment without determining when the statute of limitations period began. The Tennessee Supreme Court remanded the case back to the trial court, stating that this was a necessary determination. *See id.*

In this case, the Defendant Fite Brothers as majority shareholders and officers and directors of H & M, and Becker, as an officer and director, clearly had a fiduciary duty to Lee Fite as a minority shareholder as well as a duty to the corporation. A genuine issue of material fact exists as to whether they fraudulently concealed their actions from Lee Fite. Therefore, the Defendants are not entitled to summary judgment based on the statute of limitations at this time.

The Defendants also raise the affirmative defense of waiver, claiming that Lee Fite accepted the benefits of the Option Agreement after he knew of the alleged wrongful acts of the Defendants. *Brandon v. Wright*, 838 S.W.2d 532, 534 (Tenn. App. 1992), stated, "If, after discovery of the fraud, [the defrauded party] does any act implying acquiescence therein, or remains silent under circumstances indicating such acquiescence, this will amount to a waiver of the fraud . . ." Such acts done after knowledge of the fraud are deemed to be a voluntary waiver of the fraud. *See id.* Once

again, Lee Fite asserts that he did not know of any of the fraudulent acts until July 1995, while the Defendants assert his knowledge began in 1983. As with the statute of limitations issue discussed above, a genuine issue of material fact exists as to when Lee Fite knew or should have known of the alleged wrongful acts. Therefore, the Defendants are not at this time entitled to summary judgment based on the affirmative defense of waiver.

The third affirmative defense raised by the Defendants is judicial estoppel. Judicial estoppel prohibits a party from contradicting a sworn statement given in a prior judicial proceeding with a later statement. *See In re: Adoption of Johnson v. Johnson*, 678 S.W.2d 65, 67 (Tenn. App. 1984). The doctrine of judicial estoppel was developed to prevent a party from unfairly gaining an advantage through the use of inconsistent positions on the same issue. *See Shell v. Law*, 935 S.W.2d 402, 408 (Tenn. App. 1996) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)). The Defendants argue that judicial estoppel applies here because, in 1994, at Lee Fite's divorce proceeding, Lee Fite's attorney stated that the Option Agreement was valid:

> With regard to Exhibit 2 the closing documents in connection with the various redemptions and options of Lee P. Fite corporate and partnership interests involving entities of H & M Construction, . . . Mr. Fite is not contesting the validity of this document or the amounts that he received under this document or the ownership interests that are reflected in this document. So I don't want there to be any concern that you've got to go behind this document in terms of what he has accepted or has agreed to.
> The specifics you've asked him about he does not have information on, but so far as Exhibit 2, it speaks for itself. It's a part of the record, and we are not suggesting that it is not a valid document at this point.

The Defendants contend that this statement by Lee Fite's attorney now prevents him from contesting the validity of the Option Agreement as this would contradict his previous statement. In the above passage, however, Lee Fite's attorney speaks only of her intent to accept the validity of the agreement for the purpose of the divorce proceedings; there is no factual assertion that the agreement is valid. Therefore, based on this statement, Lee Fite is not estopped from arguing the invalidity of the Option Agreement in this lawsuit.

Finally, the Defendants argue the affirmative defense that the release contained in the Option Agreement relieves them of liability. However,

> [A] release, the execution of which is procured by false and fraudulent representations is voidable or void, and may be set aside at the instance of the party defrauded. There is abundant authority to support the rule that a false representation as to one of several matters which is material and which enters into the consideration in procuring a settlement is sufficient to render a release void.

*Evans v. Tillett Bros. Const. Co.*, 545 S.W.2d 8, 11 (Tenn. App. 1976) (citations omitted). The facts as alleged by Lee Fite could render the release void, if properly supported by evidence. The trial court granted the Defendants' motion for summary judgment before Lee Fite could establish specific facts through affidavits or discovery materials negating the validity of the release. Lee Fite is entitled to conduct some discovery in order to counter the Defendants' claims that the release abrogated their liability from Lee Fite's claims. The Defendants are not entitled to summary judgment at this time on the affirmative defense of release.

In sum, as to Lee Fite's claims of breach of fiduciary duty and fraudulent inducement to contract, the trial court erred in granting summary judgment to the Defendants without affording Lee Fite the opportunity to conduct discovery. As to Lee Fite's derivative claim for breach of fiduciary duty, the cause is remanded for the trial court to determine whether Lee Fite was the sole similarly situated shareholder. If not, Lee Fite's conflict of interest bars him from asserting a derivative action in addition to his direct action for breach of fiduciary duty. If so, then entry of summary judgment for the Defendants on this claim was premature and Lee Fite should be afforded the opportunity to conduct discovery. Since a genuine issue of material fact exists as to when Lee Fite knew or should have known of the alleged wrongful acts and whether the Defendants fraudulently concealed Lee Fite's cause of action, the Defendants are not at this time entitled to summary judgment based on the statute of limitations or the affirmative defense of waiver. This issue may be reviewed again by the trial court after discovery. As to the Defendants' affirmative defense of release, summary judgment was premature in that Lee Fite was not afforded the opportunity to conduct discovery to establish genuine issues of material fact regarding false representations made by the Defendants in the buy-out proceedings. The doctrine of judicial estoppel is not applicable to bar Lee Fite from contesting the validity of the Option Agreement, based on the statement by Lee Fite's attorney in his divorce proceeding.

The decision of the trial court is reversed and remanded. The cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs are taxed to Appellee, for which execution may issue if necessary.


_____
_____**HOLLY KIRBY LILLARD, J.**


11

**CONCUR:**

_____

**W. FRANK CRAWFORD, P. J., W.S.**


_____

**DAVID G. HAYES, J.**